UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>ALTEK CORPORATION,<br><br>    Defendant. | 12-cv-246-DLC<br><br>**REPORT OF PARTIES' DISCOVERY CONFERENCE PURSUANT TO RULE 26(f)** |

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure for the Southern District of New York, Plaintiff Eastman Kodak Company ("Kodak") and Defendant Altek Corporation ("Altek") submit this Joint Rule 26(f) Report. The parties met and conferred to discuss the issues outlined in this report on April 25, 2012.

**I.     Synopsis of the Case**

   **A.     Kodak's Synopsis of the Case**

      **1.     Nature and Bases of Kodak's Claims**

Kodak and Altek entered a Patent License Agreement ("PLA") on July 1, 2004. Under the agreement, Kodak granted Altek the right to make, use, and sell Kodak's patented digital camera technology. In exchange, Altek agreed to pay Kodak specific royalties and comply with other requirements. Among other requirements, Altek agreed to:

- Pay royalties to Kodak on all Digital Camera products that it sells, subject to two limited exceptions;

- Provide royalty reports to Kodak each quarter detailing all Digital Camera sales that it makes and the royalties due on those sales;

- Maintain "complete and accurate" records relating to the royalties due to Kodak and allow an independent auditor to conduct an audit of those records once a year; and

- Pay interest on any late royalty payments.

Altek has not complied with the clear requirements of the PLA. First, Altek has improperly relied on Section 4.14 of the PLA to refuse to make any royalty payments on certain Digital Camera sales. Under Section 4.14, Altek is not required to pay royalties on a limited group of Digital Camera sales defined as "Contract Assembly" sales. These are Digital Camera sales in which the net sales price received by Altek is less than fifty percent of the open market price that Altek receives for the sale of the same or similar Digital Cameras. In March 2011, an independent auditor determined that Altek used the "Contract Assembly" exception to withhold millions of dollars in royalty payments to Kodak on sales made from at least 2007 through 2009. Nonetheless, despite repeated requests, Altek has refused to provide to Kodak any information establishing that any of the sales for which it has withheld royalties fall within the "Contract Assembly" exception. In particular, Altek has refused to provide any information showing: (i) that the amount it received for the Digital Cameras for which it has not paid a royalty is less than fifty percent of the open market price that it receives for the same or similar cameras; or (ii) the full extent to which it has withheld royalties from Kodak based on Section 4.14.

Second, Altek has improperly relied on Section 4.12 of the PLA to refuse to make royalty payments on Digital Cameras that it has sold to other licensees to Kodak's Digital Camera Portfolio, including at least Sanyo. Section 4.12 excuses Altek from paying royalties on sales to another Kodak licensee only if: (1) the parties agree in writing that the royalties will be paid directly by the other licensee; and (2) the royalties are in fact paid by the other licensee. In March 2011, an independent auditor found that Altek withheld millions of dollars of royalty payments just from 2007 through 2009 on Digital Camera sales to Sanyo, which is a licensee to Kodak's Digital Camera Portfolio. But Kodak never agreed to allow any other licensee, including Sanyo, to pay royalties on Altek's behalf.

Third, Altek has failed to properly report its sales as required by the PLA. Section 5.1 of the PLA requires Altek to report all of its Digital Camera sales to Kodak, including Digital Camera sales that it claims should be excluded from its royalty payments and the amount of excluded royalty payments. Altek has not reported any information to Kodak about the Digital Camera sales that it excluded from its royalty payments.

Fourth, Section 5.3 of the PLA requires Altek to maintain complete and accurate records as to royalties due to Kodak and retain these records for at least three years. Nonetheless, when an independent auditor requested that Altek provide information relating to royalties due to Kodak within the prior three years, Altek asserted that it has not retained all of its underlying sales records.

Each of these failures constitutes a material breach of the PLA and has injured Kodak. Altek's failure to pay all royalties due under the PLA has damaged Kodak in at least the amount that Altek has underpaid royalties and the interest that has accrued on those royalties. Altek's failure to submit accurate royalty reports has prevented Kodak from learning whether Altek underpaid additional royalties (and, if so, by how much), increased the cost and complexity of Kodak's audits of Altek's royalty payments, and caused Kodak to expend additional time and resources trying to learn what information was missing from Altek's royalty reports. Altek's failure to maintain complete records relating to its royalty payments injured Kodak by increasing the cost and complexity of the audits, obstructing the work of the auditors, preventing Kodak from assessing Altek's compliance with the terms of the PLA, and forcing Kodak to spend additional time and resources to determine the extent of Altek's failure to pay royalties.

Altek's arguments that it has not breached the PLA are wrong as a matter of law. Altek argues that the PLA is not a binding contract because it was not approved by Altek's Board of

Directors. But Section 9.1 of the PLA explicitly gives Altek's Board of Directors until only June 30, 2004 to reject the PLA. The date of the final PLA that both parties executed is July 1, 2004—*after* this deadline expired.

Altek also asserts that the term "open market price" in Section 4.14 of the PLA is ambiguous. But the plain and ordinary meaning of "open market price" is the price that Altek receives for the sale of a digital camera in an arms-length transaction. That is exactly how the PLA itself uses the phrase in other provisions. For example, Section 1.13 of the PLA states that when Altek sells a Digital Camera in a non-arms length transaction, Altek must calculate royalties owed on that sale using the "open market price" rather than the price it received in the non-arms length transaction.

Altek also claims that it does not owe royalties on its sales to Sanyo because Kodak and Sanyo entered an agreement under which Sanyo would pay royalties on Altek's behalf. Although Sanyo was, at one time, a licensee to Kodak's Digital Camera Portfolio, Kodak never separately agreed that Sanyo would pay royalties on Asia Optical's behalf, and in any event, Sanyo has not been a Kodak licensee since at least 2011.

2.  **Relief Requested**

Kodak seeks to recover unpaid and underpaid royalties due under the PLA. Kodak also seeks interest on these royalties, as specifically provided for in the PLA. Kodak also seeks to recover the increased cost of audits due to Altek's failure to accurately report sales and royalties due and failure to maintain complete royalty records. Kodak also seeks a declaration that the PLA:

(i)  Is valid and enforceable;

(ii) Requires Altek to pay royalties on all of its sales of digital cameras for which Section 4.14 does not apply (i.e., net sales price received by Altek for the sale

                    is equal to or greater than fifty percent of the open market price that Altek receives for the sale of the same or similar camera);

      (iii)    Requires Altek to pay royalties on all of its sales of digital cameras as an OEM, including but not limited to its sales to Sanyo;

      (iv)    Requires Altek to pay interest on any late or unpaid royalties;

      (v)    Requires Altek to submit accurate royalty reports; and

      (vi)    Requires Altek to maintain complete records related to its royalty obligations under the Agreement that would allow Kodak's auditor to confirm the accuracy of Altek's royalty payments, or identify unpaid royalties on covered digital camera sales.

**B.    Altek's Synopsis of the Case**

Contrary to Kodak's assertions, this action involves complicated issues of fact and law arising from Kodak's request for declaratory judgment and claims of breach of contract. As an initial matter, Altek disagrees with Kodak's presumption that the Parties entered into a PLA on July 1, 2004. Indeed, no valid agreement exists between the Parties. The document Kodak refers to as the "PLA" explicitly requires that the "Agreement is made subject only to the approval of Altek's Board of Directors in accordance with the by-laws of the corporation." Section 9.1. There is no evidence that Altek's Board has ever approved such an agreement with Kodak. Rather, the evidence shows that Kodak executed the PLA on July 14, 2004—two weeks *after* approval from Altek's board was supposed to occur—despite the fact that Altek's board had not approved. Kodak never followed up with Altek regarding this board approval. Kodak cannot meet its burden in establishing that the PLA is a valid, enforceable contract.

To the extent that any contract exists between the Parties, it can only exist as an implied contract. As an implied contract, the terms are determined by the conduct of the parties. As a primary matter, establishing such an implied contract will required discovery on many questions of fact based on each Party's conduct. Such discovery will show that Altek's conduct with

respect to its relationship with Kodak was consistent throughout and therefore, Altek has not breached any implied agreement.

Even if Altek had received the requisite board approval, which it did not, and the PLA is a valid agreement, which it is not, Kodak's attempt to impose liability on Altek under Sections 4.14 and 4.12 fail.  Section 4.14 of the PLA provides that Altek is not required to make payments on a group of digital cameras defined as "Contract Assembly" sales.  Under the PLA, "Contract Assembly" sales account for those digital camera sales in which the net sales price received by Altek is less than fifty percent of the "open market price."  Kodak's assertion that "Altek used the 'Contract Assembly' exception to withhold millions of dollars in royalty payments to Kodak," is improper.  "Open market price" is not defined in the contract, but rather is an ambiguous term.  The parties dispute its meaning.  The interpretation of this ambiguous term also likely raises questions of fact concerning the "market."  In addition, Section 4.12 of the PLA excludes royalty payments for Altek's sales to another Kodak licensee where: 1) the Kodak Licensee and Kodak have a separate agreement whereby the Kodak Licensee agrees to directly pay Kodak royalties; and 2) the Kodak Licensee in fact makes royalty payments pursuant to the separate agreement.  Kodak asserts that "Altek withheld millions of dollars of royalty payments," by relying on Section 4.12 of the PLA.  The only Kodak Licensee identified by Kodak is Sanyo.  Sanyo, however, has confirmed that it has entered into a written agreement with Kodak to pay Kodak royalties directly, has in fact made such royalty payments, and is currently in good standing with Kodak.  Given these facts, Kodak cannot meet its burden in showing that Altek breached Section 4.12 of the PLA.

**II.     Fed R. Civ. P. 26(F)(3)(A) - Changes in the timing, form, or requirement for disclosures under Rule 26(a).**

The parties do not propose any changes to the form or requirements for disclosures under Rule 26(a).  Initial disclosures will be exchanged on or before June 15, 2012.

**III.    Fed R. Civ. P. 26(F)(3)(B) - Subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues.**

   **A.     The Parties' Proposed Case Schedule**

The parties agree on the following case schedule:

| EVENT | DATE |
| --- | --- |
| Last day to file motions to amend pleadings | May 30, 2012 |
| Last day to join other parties | May 30, 2012 |
| Initial Disclosures | June 15, 2012 |
| Close of Discovery | December 31, 2012 |
| Deadline for Motions to Compel Discovery | January 18, 2013 |
| Opening Expert Reports | February 28, 2013 |
| Rebuttal Expert Reports | April 10, 2013 |
| Close of Expert Discovery | June 10, 2013 |
| Last day to file dispositive motions | July 10, 2013 |
| Trial | October 31, 2013 |

If the Court prefers, Kodak is agreeable to an alternative, phased schedule whereby the Court addresses early summary judgment motions on the existence and interpretation of the PLA and whether Altek is liable for breaching the terms of the PLA.  Kodak believes that this case is

appropriate for such a schedule. The dispute hinges on the proper interpretation of the PLA, which is an issue of law that the Court can resolve early in the case. Altek's objections to an early summary judgment schedule are flawed. The issues that Altek contends require discovery -- the validity of the PLA, the meaning of its terms, and whether the terms are ambiguous -- are questions of law that the Court can resolve early in the case, without the need for an extended period of fact and expert discovery.

Altek does not believe that such a schedule is appropriate given the various and complicated issues of fact surrounding contract formation and interpretation that are present in this case, including, but not limited to the following issues:

- whether a valid contract exists;
- the terms of any such agreement;
- the conduct of the Parties in determining any such terms;
- the meaning of undefined and ambiguous terms included in the PLA (including the definition of "open market price");
- any breach of any such terms; and
- any liability that flows from any such breach.

Rather, Altek proposes full discovery in accordance with and as contemplated by the Federal Rules of Civil Procedure. Should the Court, however, determine that early summary judgment motions are appropriate, Altek intends to move for summary judgment on the validity of the PLA and on the lack of breach of contract due to the failure to establish a contract.

### B. Kodak's Topics for Discovery

In the event that the Court prefers that the parties complete full discovery before addressing summary judgment, Kodak intends to take discovery relating to the following issues:

- The Digital Camera sales that Altek has excluded from its royalty payments under Section 4.14 of the PLA;

- Altek's open market price for the Digital Cameras that it excluded from its royalty payments Section 4.14 of the PLA;

- The bases for Altek's exclusion of Digital Camera sales under Section 4.12 of the PLA;

- The Digital Camera Sales that Altek has excluded from its royalty payments under Section 4.12 of the PLA;

- The bases for Altek's exclusion of Digital Camera sales under Section 4.12 of the PLA;

- Altek's royalty payments and reports;

- The audit of Altek's royalty payments;

- Issues to rebut Altek's defenses, including issues relating to the negotiation and completion of the PLA.

C.  **Altek's Topics for Discovery**

Altek intends to take including discovery related to the following issues:

a) the existence of a contract;

b) the nature and terms of any possible agreements between the Parties;

c) each Party's behavior or conduct with respect to any possible agreement between them;

d) any royalty payment agreements between Kodak and Altek's OEMs (including Sanyo) whereby an Altek OEM agreed to make direct royalty payments to Kodak and in fact made such payments;

e) the breach of a possible agreement between the parties; and

f) the interpretation of "open market price" if it is a part of the contract.

IV. **Fed. R. Civ. P 26(f)(3)(C) - Issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.**

Disclosure or production of ESI will include data that is accessible to the parties in the ordinary course of business. The parties agree that the party producing the ESI shall be given the

opportunity to review the data prior to production for the purpose of identifying privileged information for which a detailed privilege log will be provided to the requesting party along with the produced ESI.  The parties will confer to discuss mutually agreeable formatting and procedures for producing ESI.

All documents will be produced as black and white single-page tiff images, including OCR of text to the extent possible, along with load files. Production of native files and metadata shall not be required unless otherwise agreed.  The parties reserve the right to request production of native versions and metadata for individual documents upon the articulation of a specific good faith basis for such production.

**V.     Fed. R. Civ. P. 26(f)(3)(D) - Issues about claims of privilege or of protection as trial preparation materials.**

 Any party who withholds privileged documents or other information will provide a log identifying such documents and providing sufficient information to allow the opposing party to assess the basis for the assertion of privilege.  The parties agree that privilege logs need not be exchanged on the same date that discovery responses are due and will work together to find a mutually convenient date for the exchange of privilege logs.  The parties will also meet and confer with regard to any disputed assertions of privilege before resorting to motion practice.

The parties agree that privilege logs need disclose only those privileged documents dated prior to January 14, 2012, the date that the complaint was filed, and that the parties will agree not to pursue discovery of or seek a schedule of privileged documents dated on or after that date absent a showing of good cause as to particular documents.

**VI.     Fed. R. Civ. P. 26(f)(3)(E) - Changes in the limitations on discovery imposed under these rules or by local rule.**

1.  **Interrogatories**

The parties do not propose any modification to the limits on Interrogatories (25 per party) as set forth in the Federal Rules of Civil Procedure.  In addition, the parties agree that (1) any request for admission that purports to require an explanation for any response other than an absolute admission constitutes an interrogatory; and (2) any interrogatory that seeks an explanation for a response to requests for admission shall constitute the number of interrogatories equal to the number of requests for admission for which a response is requested.

2.  **Document Requests**

The parties do not propose any changes to the limitations on document requests imposed by the Federal Rules of Civil Procedure or the Local Rules for the Southern District of New York.

3.  **Requests for Admission**

The parties do not propose any changes to the limitations on Requests for Admission imposed by the Federal Rules of Civil Procedure or the Local Rules for the Southern District of New York.

4.  **Depositions**

A.   Kodak's Proposal

Kodak proposes that each party may depose the individuals that the opposing party identifies on its Initial Disclosures and trial witness list, witnesses designated to testify in response to a 30(b)(6) notice, and three (3) other fact witnesses.  Kodak further proposes that expert depositions are not subject to the provisions and limitations of this subparagraph.  Kodak further proposes that depositions shall be limited to 7 hours for each English-speaking fact

witness, and 12 hours for each witness for whom translation is required.  Finally, Kodak requests that Altek make available for deposition in the United States each witness that it may bring to the United States for trial.

  B. Altek's Proposal

Altek proposes that the Parties engage in full discovery, rather than an initial limited discovery period.  The Federal Rules of Civil Procedure shall govern with the following inclusions:  1) depositions shall be limited to 7 hours for each English-speaking fact witness, and 10 hours for each witness for whom interpretation is required; (2) depositions shall be conducted where the deponent resides.

  5. **Modifying these Limitations**

In the event either party discovers a need for more extensive discovery, the parties will meet and confer and attempt to reach an agreement allowing some further discovery.  If the parties cannot reach an agreement, the party seeking further discovery is free to seek leave of court to propound further requests.

**VII.** **Fed. R. Civ. P. 26(f)(3)(F) - Any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).**

The parties will make a good faith effort to agree upon a protective order and to submit the agreed upon protective order to the Court for entry on or before June 29, 2012.

**VIII.** **Miscellaneous**

  A. **Settlement**

  A. Kodak:  The parties have conferred to discuss settlement options on at least the following dates:  January 18, 2011, January 26, 2011, January 31, 2011, February 13, 2011, February 17, 2011, February 18, 2011, February 19, 2011, March 25, 2011, March 26, 2011,

April 15, 2011, April 21, 2011, April 23, 2011, April 26, 2011, April 27, 2011, May 13, 2011, May 18, 2011, and August 26, 2011.  The parties have been unable to resolve the dispute.

B.   Altek:  The Parties have not engaged in any meaningful settlement discussions. Altek is amenable to discussing settlement options.

### B.   Magistrate Judge

The parties do not currently believe that assignment of this case to a Magistrate Judge is necessary.   The parties will notify the Court if they request assignment of this case to a Magistrate Judge for resolution of discovery and non-dispositive issues.

### C.   Alternative Dispute Resolution

The parties agree to discuss Alternative Dispute Resolution with a private mediator or magistrate judge.

### D.   Electronic Exchange of Discovery

The parties agree to exchange discovery demands electronically in addition to serving paper copies.

### E.   Jury Trial

A.   Kodak requests a jury trial and estimates a 4 to 5 day trial.

B.   Altek requests a jury trial and estimates a 8 to 10 day trial.

Respectfully submitted,

- 14 -

| COUNSEL FOR PLAINTIFF | COUNSEL FOR DEFENDANT |
|---|---|
| *s/ Robert J. Gunther, Jr.* |    **/s/ Lisa T. Simpson (*with permission*)** |
| Robert J. Gunther, Jr.<br>Wilmer Cutler Pickering Hale & Dorr, LLP<br>399 Park Avenue<br>New York, New York 10022<br>Tel: (212) 230-8800<br>Fax: (212) 230-8888<br>robert.gunther@wilmerhale.com | Lisa T. Simpson<br>51 W. 52nd Street<br>New York, NY  10019-6142<br>(212) 506-5000<br>lsimpson@orrick.com |
| Michael J. Summersgill<br>Jordan L. Hirsch<br>Wilmer Cutler Pickering Hale & Dorr, LLP<br>60 State Street<br>Boston, MA 02106<br>Tel: (617) 526-6000<br>Fax: (617) 526-5000<br>michael.summersgill@wilmerhale.com<br>jordan.hirsch@wilmerhale.com | Michael F. Heafey (admitted *pro hac vice*)<br>1000 March Road<br>Menlo Park, CA  94025-1021<br>(650) 614-7400<br>mheafey@orrick.com<br><br>Attorneys for Defendant Altek Corporation |
| Dated:  New York, New York<br>        May 7, 2012 | Dated: New York, New York<br>May 7, 2012 |


| COUNSEL FOR PLAINTIFF | COUNSEL FOR DEFENDANT |
|---|---|
| *s/ Robert J. Gunther, Jr.* |    **/s/ Lisa T. Simpson (*with permission*)** |
| Robert J. Gunther, Jr.<br>Wilmer Cutler Pickering Hale & Dorr, LLP<br>399 Park Avenue<br>New York, New York 10022<br>Tel: (212) 230-8800<br>Fax: (212) 230-8888<br>robert.gunther@wilmerhale.com | Lisa T. Simpson<br>51 W. 52nd Street<br>New York, NY  10019-6142<br>(212) 506-5000<br>lsimpson@orrick.com |
| Michael J. Summersgill<br>Jordan L. Hirsch<br>Wilmer Cutler Pickering Hale & Dorr, LLP<br>60 State Street<br>Boston, MA 02106<br>Tel: (617) 526-6000<br>Fax: (617) 526-5000<br>michael.summersgill@wilmerhale.com<br>jordan.hirsch@wilmerhale.com | Michael F. Heafey (admitted *pro hac vice*)<br>1000 March Road<br>Menlo Park, CA  94025-1021<br>(650) 614-7400<br>mheafey@orrick.com<br><br>Attorneys for Defendant Altek Corporation |
| Dated:  New York, New York<br>      May 7, 2012 | Dated: New York, New York<br>May 7, 2012 |