Michael F. Heafey
mheafey@orrick.com
Morvarid Metanat
mmetanat@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401

Lisa Simpson
lsimpson@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W. 52nd Street
New York, NY  10019-6142
Telephone:  (212) 506-5000
Facsimile:  (212) 506-5151

Attorneys for Defendant
Altek Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------

| | |
|---|---|
| EASTMAN KODAK COMPANY, | Civil Action No.  12-cv-0246-DLC |
| Plaintiff, | |
| v. | Hon. Denise L. Cote |
| ALTEK CORPORATION, | |
| Defendant. | |

----------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALTEK
CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................................................. 1

II.   FACTUAL BACKGROUND ........................................................................................... 1

III.  ARGUMENT.................................................................................................................... 4

      A.    Summary Judgment Is Appropriate To Determine The Plain Meaning Of
            Contract Terms.................................................................................................... 5

      B.    "Open Market Price" Is Properly Interpreted As A Matter Of Law As A
            "Retail Price" ...................................................................................................... 6

            1.    Contract Interpretation Under New York Law ......................................... 6

            2.    The Plain Meaning Of "Open Market Price" Is "Retail Price" ................ 6

            3.    A "Retail Price" Interpretation Provides Consistency And Effect
                  To All Provisions Of The PLA, Including Sections 1.13 and 4.14 .......... 7

                  a.    The Definition Of "Net Sales" Under  Section 1.13...................... 7

                  b.    A "Retail Price" Interpretation Provides Consistency And
                        Effect To All Provisions Of The PLA, Including Sections
                        4.14 And 1.13................................................................................. 8

                        (1)    Altek's Interpretation Gives Effect To Section 4.14 ......... 8

                        (2)    Altek's Interpretation Gives Effect To Section 1.13 ......... 9

      C.    Kodak's Interpretation Fails As A Matter Of Law ............................................. 9

      D.    Altek's Interpretation Of "Open Market Price" Is The Only Reasonable
            Interpretation.................................................................................................... 11

      E.    Kodak Cannot Demonstrate Issues Of Material Fact With Respect To The
            Interpretation Of "Open Market Price"............................................................ 13

            1.    "Open Market Price" Is Unambiguous ................................................... 13

            2.    As "Open Market Price" Is Unambiguous, Extrinsic Evidence Is
                  Not Permitted To Aid In Its Interpretation ............................................ 13

IV.   CONCLUSION............................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H.A. Gen. Constr. v. New York City Hous. Auth.*,
　92 N.Y.2d 20 (1998) ...............................................................................................14

*American Express Bank Ltd. v. Uniroyal, Inc.*,
　562 N.Y.S.2d 613 (N.Y. App. Div. 1990) .............................................................12

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986)..................................................................................................5

*Bestform, Inc. v. Herman*,
　804 N.Y.S.2d 80 (N.Y. App. Div. 2005) ...............................................................11

*Brooke Group Ltd. v. JCH Syndicate 488*,
　663 N.E.2d 635 (N.Y. 1996).....................................................................................6

*CCG Assocs. I v. Riverside Assocs.*,
　556 N.Y.S.2d 859 (N.Y. App. Div. 1990) ...................................................10, 12, 13

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986)..................................................................................................5

*County of Suffolk v. Alcorn*,
　266 F.3d 131 (2d Cir. 2001)......................................................................................6

*DCMR v. Trident Precision Mfg.*,
　317 F. Supp. 2d 220 (W.D.N.Y. 2004) .....................................................................5

*Evans v. Famous Music Corp.*,
　807 N.E.2d 869 (N.Y. 2004).....................................................................................6

*Heublein, Inc. v. United States*,
　996 F.2d 1455 (2d Cir. 1993)....................................................................................5

*HSBC Bank USA v. Nat'l Equity Corp.*,
　719 N.Y.S.2d 20 (N.Y. App. Div. 2001) ...............................................................12

*Innophos, Inc. v. Rhodia, S.A.*,
　882 N.E.2d 389 (N.Y. 2008).....................................................................................14

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
　98 F. Supp. 2d 498 (S.D.N.Y. 2000)....................................................................6, 13

*Isaacs v. Westchester Wood Works, Inc.*,
 718 N.Y.S.2d 338 (N.Y. App. Div. 2000) ...............................................................................11

*Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*,
 No. 07 Cv. 0432 (LAP), 2009 U.S. Dist. LEXIS 89979 (S.D.N.Y. Sept. 29, 2009) .................5

*James v. Jamie Towers Housing Co.*,
 743 N.Y.S.2d 85 (N.Y. App. Div. 2002) ................................................................................10

*K. Bell & Assocs., v. Lloyd's Underwriters*,
 97 F.3d 632 (2d Cir. 1996)...............................................................................................6, 13

*Maryland Cas. Co. v. W.R. Grace and Co.*,
 128 F.3d 794 (2d Cir. 1997)..................................................................................................12

*Nat'l Conversion Corp. v. Cedar Building Corp.*,
 246 N.E.2d 351 (N.Y. 1969)..................................................................................................10

*Ravenell v. Van der Steeg*,
 No. 05 CIV 4042, 2007 WL 765716 (S.D.N.Y. Mar. 14, 2007) .............................................5

*Readco, Inc. v. Marine Midland Bank*,
 81 F.3d 295 (2d Cir. 1996)....................................................................................................13

*Rothenberg v. Lincoln Farm Camp, Inc.*,
 755 F.2d 1017 (2d Cir. 1985)................................................................................................12

*Ruttenberg v. Davidge Data Sys. Corp.*,
 626 N.Y.S.2d 174 (N.Y. App. Div. 1995) .............................................................................12

*S. Road Assocs., LLC v. Int'l Bus. Machines Corp.*,
 826 N.E.2d 806 (N.Y. 2005)....................................................................................................6

*Seabury Constr. Corp. v. Jeffery Chain Corp.*,
 289 F.3d 63 (2d Cir. 2002).....................................................................................................12

*Signature Realty, Inc. v. Tallman*,
 814 N.E.2d 429 (N.Y. 2004).....................................................................................................7

*Sutton v. E. River Sav. Bank*,
 435 N.E.2d 1075 (N.Y. 1982)...........................................................................................12, 13

*Third Ave. Trust v. SunTrust Bank*,
 166 F. Supp. 2d 783 (S.D.N.Y. 2001)....................................................................................13

*Tobin v. Union News Co.*,
 239 N.Y.S.2d 22 (N.Y. App. Div. 1963) ...............................................................................14

*W.W.W. Assocs., Inc. v. Giancontieri,*
    566 N.E.2d 639 (N.Y. 1990)......................................................................................6, 13

*Zolotar v. New York Life Ins. Co.*,
    576 N.Y.S.2d 850 (N.Y. App. Div. 1991) ...................................................................5

**Rules**

Fed. R. Civ. P. 56(a) ...........................................................................................................5

Fed. R. Civ. P. 56(c)(1)(A) .................................................................................................9

**Other Authorities**

2 The New Oxford English Dictionary (L. Brown, ed., 1993) ...........................................7

I.      **INTRODUCTION**

A key term of the parties' Patent License Agreement ("PLA") is "open market price" which appears in Sections 1.13 and 4.14.[1]  While the PLA does not define "open market price," the plain meaning and the four corners of the PLA unambiguously support and are consistent with Altek's interpretation of "open market price" as a "retail price" of a digital camera manufactured by Altek.

Unlike Altek's reasonable and consistent interpretation, Kodak's interpretation of "open market price," in addition to being contrary to the plain meaning, results in contradictions between material provisions of the PLA and renders Section 4.14's "Contract Assembly" exemption ineffective.  As a result:

1)      Altek's interpretation of "open market price" is the only reasonable

        interpretation;

2)      Kodak's interpretation is not reasonable;

3)      the interpretation of "open market price" is a question of law;

4)      "open market price" is unambiguous because it only has one reasonable

        interpretation; and

5)      extrinsic evidence may not be admitted because "open market price" is not

        ambiguous and such evidence would support contradictions within the PLA.

II.     **FACTUAL BACKGROUND**

Altek is a Taiwanese manufacturer of digital cameras.  Declaration of Alex Hsia in Support of Altek Corporation's Motion for Partial Summary Judgment ("Hsia Decl."), ¶ 3.

---

[1] Altek continues to dispute that the PLA is a valid and enforceable agreement, but for purposes of this motion, Altek will treat the PLA as though it is a binding contract between the parties. Altek does not waive its rights to contest the validity of the PLA.

Altek manufactures digital cameras for third parties. *Id.* Altek's customers provide Altek with

hardware specifications, proprietary software and firmware for the manufacture of their cameras.

*Id.* Given the nature of Altek's business, Altek never sells the same camera to more than one

customer. *Id.* In addition, Altek very rarely sells cameras directly to consumers.[2] *Id.*, ¶ 4. Its

customers, directly or through a chain, sell the cameras to consumers. *Id.* Kodak has been an

Altek customer since 2002, and beginning in 2003, Kodak has been one of Altek's major

customers. *Id.*, ¶ 5.

In 2001, Kodak accused Altek of infringing its patents and demanded that Altek take a

patent license. *Id.*, ¶ 6. Kodak threatened to cease all business with Altek if it did not enter into

a license. Declaration of Morvarid Metanat in Support of Altek Corporation's Motion for Partial

Summary Judgment ("Metanat Decl."), Exs. A & B. Fearing that it would lose Kodak's business

and ultimately go out of business, Altek entered into negotiations with Kodak to license Kodak's

patents. Hsia Decl., ¶ 7.

At the onset of these negotiations, Kodak drafted a license agreement which permitted

Altek the use of its patents for the manufacture of digital cameras for third parties. Metanat

Decl. Ex. K, §§ 1.14 & 3.1 and Ex. E at 40:14-41:18. These products are referred to as "OEM

Licensed Products." *Id.*, Ex. C, § 1.14; Ex. K, § 1.14.

Under the PLA, Altek is responsible for making royalty payments on all of its digital

camera sales, with a few exceptions. *Id.*, §§ 4.10, 4.12 & 4.14. For instance, pursuant to Section

4.14 of the PLA, Altek is not required to make royalty payments on digital camera sales that fall

within the "Contract Assembly" exemption, that is, where its "net sales" received are less than

---

[2] Altek only sells directly to a consumer where it manufacturers an "Altek Branded Licensed Cameras." "Altek Branded Licensed Products," however, are not at issue in this litigation. Here, Kodak seeks royalties for "OEM Licensed Products."

fifty percent of the "open market price."  *Id*., § 4.14.  "Open market price" refers to:

> the "retail price" of a digital camera manufactured by Altek.  The
> retail price refers to the price of the specific camera to a consumer
> in the "open market."

*Id*., Ex. D at Third Suppl. Interrog. Resp. No. 7.

Kodak, as drafter and custodian of the PLA, added Section 4.14 to the PLA prior to its

execution.  *Id*., Ex. E at 86:5-17; 89:17-90:20.  Kodak did not include a definition of "open

market price" in the PLA.  *See generally id*., Ex. C.  Following Kodak's inclusion of Section

4.14, and prior to executing the PLA, Altek made several attempts to confirm the meaning of this

Section.  *Id.*, Exs. F & G.  In response, Kodak first stated that Section 4.14 was "self

explanatory" and later "explained" that under the Section:

> any product which Altek receives 50% or more in value to the
> market value of the product, is a royalty bearing licensed product
> and anything less than 50%, is a non-royalty bearing and
> unlicensed product.

Metanat Decl., Exs. F & H.  It was not until August 26, 2011, that Kodak conveyed its

interpretation to Altek—that "open market price" was the price for which Altek sold its

manufactured cameras to its customers.  *Id*., Ex. I.  Indeed, it is Kodak's position, as stated in its

verified Interrogatory Responses[3], that "open market price" is the "price that Altek receives

through a non-discounted, ***arms-length*** [sic] transaction" with its customers who then sell the

cameras to consumers on the retail market.  *Id*., Ex. J at Interrog. Resp. No. 3 (emphasis added).

Kodak's original draft of this license agreement also included the final version of Section

---

[3] Kodak's Objections and Responses to Altek's July 6, 2012 Second Set of Interrogatories were
verified by Timothy Lynch whereby Mr. Lynch certified that Kodak's "answers are true and
correct to the best of Kodak's present knowledge, information, and belief."  Metanat Decl., Ex. J
at 19.

1.13[4] that provides guidance on the definition of "net sales" for use in calculating royalty

payments under the PLA.  *See id*., Ex. K & Ex. E at 97:20-98:6; 99:5-17.  Section 1.13 states the

following:

> (b)(1)  In the case of an arms [sic] length sale or other disposal of
> an OEM Licensed Product . . . . ***Net Sales shall mean the total net***
> ***revenue received by Altek and its Subsidiaries*** . . . .

and

> (b)(2)  In the case of a sale or disposal of an OEM Licensed
> Product which has not been sold in an arms [sic] length
> transaction, ***Net Sales shall mean Altek's open market price for***
> ***such OEM Licensed Product*** in the country of sale on the date
> when such sale occurred. .  . . .

Metanat Decl. Ex. C, § 1.13 (emphasis added).

Altek and Kodak signed the PLA on July 1, 2004 and July 14, 2004, respectively.  *Id*. at

20; Hsia Decl., ¶ 8.  On January 12, 2012, Kodak filed suit against Altek alleging breach of the

PLA.  ECF No. 1.  The terms of the PLA are critical to the dispute; particularly the interpretation

of "open market price."  On June 25, 2012, the Court allowed for discovery on the interpretation

of "open market price" and permitted the parties to move for summary judgment on limited

contract interpretation issues.  ECF No. 36.

## III.     ARGUMENT

Altek's interpretation of "open market price" is not only consistent with the term's plain

and ordinary meaning, it is consistent with all provisions of the PLA and does not create

contradictions.  Kodak's interpretation, on the other hand, is not the plain and ordinary meaning

and creates contradiction in the PLA.  As there is only one reasonable interpretation, "open

---

[4] Prior to its execution, the PLA went through various iterations.  The provision referenced as
Section 1.13 is numbered as such in the final, executed PLA, but may have been numbered
differently in intervening drafts.  *See* Metanat Decl., Ex. C.

market price" should be interpreted as the "'retail price" of a digital camera manufactured by

Altek.  Summary judgment in favor of Altek is warranted.

### A.    Summary Judgment Is Appropriate To Determine The Plain Meaning Of Contract Terms

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there

is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the

moving party demonstrates that there is no genuine issue of material fact, the nonmoving party

must designate "specific facts showing that there is a genuine issue for trial."  *Celotex,* 477 U.S.

at 322-23.  There is no genuine issue of material fact if "the evidence … is of insufficient caliber

or quantity to allow a rational finder of fact" to find for the nonmoving party.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

> The non-moving party must do more than simply show there is
> some metaphysical doubt as to the material facts, and may not rely
> on conclusory allegations or unsubstantiated speculation.  The
> mere existence of a scintilla of evidence in support of the [non-
> movant's] position will be insufficient.  Instead, the non-movant
> must offer concrete evidence from which a reasonable juror could
> return a verdict in his favor.

*Ravenell v. Van der Steeg*, No. 05 CIV 4042, 2007 WL 765716, at *3 (S.D.N.Y. Mar. 14, 2007)

(quotations and citations omitted).  In a contract dispute, summary judgment is appropriate to

enforce the plain meaning of the contract.  *Zolotar v. New York Life Ins. Co.*, 576 N.Y.S.2d 850,

852 (N.Y. App. Div. 1991); *DCMR v. Trident Precision Mfg*., 317 F. Supp. 2d 220, 224

(W.D.N.Y. 2004).

When parties submit cross-motions, the Court must evaluate each motion on its own

merits.  *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.,* No. 07 Cv. 0432 (LAP), 2009 U.S. Dist.

LEXIS 89979, at *15 (S.D.N.Y. Sept. 29, 2009); *Heublein, Inc. v. United States*, 996 F.2d 1455,

1461 (2d Cir. 1993) (citations omitted).

      **B.**      **"Open Market Price" Is Properly Interpreted As A Matter Of Law As A**
              **"Retail Price"**

As a matter of law, the term "open market price" has only one reasonable

interpretation—a "retail price" of a digital camera manufactured by Altek.  The retail price refers

to the price of the specific camera to a consumer in the "open market."

      **1.**      **Contract Interpretation Under New York Law**

"[T]he initial interpretation of a contract 'is a matter of law for the court to decide."  *K.*

*Bell & Assocs., v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (citation omitted);

*W.W.W. Assocs., Inc. v. Giancontieri,* 566 N.E.2d 639, 642 (N.Y. 1990).  The court's role is to

ascertain the parties' intent at the time they entered into the contract.  *Evans v. Famous Music*

*Corp.*, 807 N.E.2d 869, 872 (N.Y. 2004).  In contract interpretation, words and phrases

referenced in the contract should be given their plain meaning.  *Brooke Group Ltd. v. JCH*

*Syndicate 488*, 663 N.E.2d 635, 638 (N.Y. 1996); *Int'l Multifoods Corp. v. Commercial Union*

*Ins. Co.*, 98 F. Supp. 2d 498, 503 (S.D.N.Y. 2000).  To the extent possible, the parties' rights

under a contract should be determined solely by the terms expressed in the four corners of the

instrument itself.  *S. Road Assocs., LLC v. Int'l Bus. Machines Corp.,* 826 N.E.2d 806 (N.Y.

2005); *County of Suffolk v. Alcorn*, 266 F.3d 131, 138 (2d Cir. 2001).  Here, the plain and

ordinary meaning of "open market price" as used within the four corners of the PLA establishes

that only one reasonable interpretation of the term "open market price" exists—that is, a "retail

price."

      **2.**      **The Plain Meaning Of "Open Market Price" Is "Retail Price"**

The correct interpretation of "open market price" is its plain meaning—a "retail price."

"Open market price" is the price of a product in an open market.  An *open* market is a market

that is available to *the public at large*—not just distributors.  "Retail" is defined as "[t]he sale to

the *public* of goods . . . ."  2 The New Oxford English Dictionary, 2571 (L. Brown, ed., 1993)

(emphasis added).  The "public" consists of any and all individuals.  In other words, the "retail

price" is the price of a camera to a consumer in the "open market."  As a general rule, courts

enforce an agreement according to the plain meaning of its terms.  *Signature Realty, Inc. v.*

*Tallman*, 814 N.E.2d 429, 430 (N.Y. 2004).

### 3.    A "Retail Price" Interpretation Provides Consistency And Effect To All Provisions Of The PLA, Including Sections 1.13 and 4.14

The four corners of the PLA also demonstrate that "open market price" means "retail

price."  Indeed, a "retail price" is the only interpretation that is consistent with all provisions of

the PLA, including Sections 1.13 and 4.14.

Pursuant to Section 4.10, Altek shall pay a royalty on all of the Digital Cameras it sells or

transfers, except those cameras within an exemption, *i.e.,* Sections 4.12 or 4.14.  Metanat Decl.

Ex. C, §§ 4.10 & 4.14.  The "Contract Assembly" provision of Section 4.14 exempts cameras

from royalties where "the Net Sales collected or received by Altek for [digital cameras] is less

than fifty-percent (50%) of the open market price. . . ."  *Id*., § 4.14.

#### a.   The Definition Of "Net Sales" Under  Section 1.13

Section 4.14 of the PLA cannot be applied without first determining the meaning of "net

sales" under Section 1.13 of the PLA.  Significantly, only Altek's interpretation of "open market

price" is consistent with Section 1.13 which includes the following definitions for "net sales":

(b)    OEM Licensed Product

7

(1)  In the case of an arms [sic] length sale or other disposal of an OEM Licensed Product . . . . ***Net Sales shall mean the total net revenue received by Altek and its Subsidiaries*** . . . .

and

(2)  In the case of a sale or disposal of an OEM Licensed Product which has not been sold in an arms [sic] length transaction, ***Net Sales shall mean Altek's open market price for such OEM Licensed Product*** in the country of sale on the date when such sale occurred . . . .

Metanat Decl. Ex. C, § 1.13 (emphasis added).

Section 1.13(b)(1) defines "net sales" where Altek engages in an arm's-length transaction.  For Altek's sales resulting from an arm's-length transaction, "net sales" are the "net sales" received by Altek.  *Id.*, Ex. C, § 1.13(b)(1).

Section 1.13(b)(2) defines "net sales" where Altek's sales are *not* at an arm's-length price to be the "open market price." Metanat Decl. Ex. C, § 1.13(b)(2).

### b.  A "Retail Price" Interpretation Provides Consistency And Effect To All Provisions Of The PLA, Including Sections 4.14 And 1.13

The interpretation of "open market price" as "retail price" allows for consistent application throughout the PLA and does not create any contradictions.  Under Section 4.14, cameras are exempted from royalties where Altek's sales price is less than fifty percent of the "retail price."  Under Section 1.13, should Altek engage in a non-arm's length transaction, the "net sales" are imputed up to the "open market price"—the "retail price."

### (1) Altek's Interpretation Gives Effect To Section 4.14

Pursuant to Sections 4.14 and 1.13, when Altek engages in an arm's-length transaction, it is responsible for royalty payments where the "net sales" it receives are more than fifty percent of the "open market price," or as Altek interprets it, the "retail price." Metanat Decl. Ex. C, §§

4.14, 1.13(b)(1).  In other words, where Altek receives the majority of the revenues, or more than fifty percent of the "retail price," Altek must pay royalties.

### (2) Altek's Interpretation Gives Effect To Section 1.13

Should Altek engage in a ***non-arm's length*** transaction, Section 1.13(b)(2) automatically sets "net sales" to the "open market price," or under Altek's interpretation, the "retail price." This results in the highest royalty base—the "open market price" or "retail price."  The "retail price" is an objective price.  Accordingly, Section 1.13 bypasses any possible manipulation by non-arm's length transactions, setting the royalty base at a non-manipulatable highest possible price.  Altek's interpretation gives the fullest effect to Section 1.13.[5]

### C.      Kodak's Interpretation Fails As A Matter Of Law

Kodak interprets "open market price" as the price Altek receives through a "non-discounted, ***arms-length*** [sic] transaction."  Metanat Decl., Ex. J at Interrog. Resp. No. 3. Kodak's interpretation equates "open market price" with the "arms-length" price.  *Id.*  Any price below the arm's-length price (the "open market price") is therefore, not arm's-length.  *Id*.  Kodak asserted its interpretation of "open market price" on August 16, 2012, in response to Altek's Second Set of Interrogatory Requests.  *Id.*; Fed. R. Civ. P. 56(c)(1)(A).

As a matter of law, Kodak's interpretation must be rejected because it is not the plain and ordinary meaning.  Kodak's interpretation also creates contradiction between material provisions

---

[5] A "retail price" interpretation is consistent and reasonable in every instance "open market price" appears in the PLA.  In addition to Sections 4.14 and 1.13(b) discussed above, applying a "retail price" definition to "open market price" as referenced in Section 1.13(a)(3) of the PLA is also reasonable.  Under Section 1.13(a)(3), where Altek engages in an arm's-length transaction of an "Altek Branded Licensed Product," it is responsible for royalty payments only where the "net sales" it receives are more than fifty percent of the "open market price," or as Altek interprets it, the "retail price."

of the PLA and therefore, unreasonably violates the law that a construction must harmonize conflicting provisions and avoid inconsistency.  Specifically, Kodak's interpretation results in incongruity between Sections 4.14 and 1.13 of the PLA, rendering Section 4.14 ineffective.

First, Kodak's interpretation of "open market price" is not the plain and ordinary meaning.  *CCG Assocs. I v. Riverside Assocs.*, 556 N.Y.S.2d 859, 862 (N.Y. App. Div. 1990). "Open market price" says nothing about "discounts" or "arms-length transactions"—Kodak is reading terms into "open market price."

Second, Kodak's interpretation improperly creates contradictions between Sections 1.13(b)(2) and 4.14, rendering Section 4.14 ineffective, and violating the cannon of contract construction that an interpretation should avoid inconsistency and must not create contradictions.[6]  *James v. Jamie Towers Housing Co.,* 743 N.Y.S.2d 85, 87 (N.Y. App. Div. 2002); *Nat'l Conversion Corp. v. Cedar Building Corp*., 246 N.E.2d 351, 354 (N.Y. 1969).

Pursuant to Section 4.14, Altek is exempt from paying royalties on digital cameras where Altek's "net sales" are below fifty percent of the "open market price."  Metanat Decl. Ex. C, § 4.14.  Under Kodak's interpretation of "open market price," where the "net sales" received by Altek are less than fifty percent of the price Altek receives through a "non-discounted, ***arms-length*** [sic] transaction," Section 4.14 should exempt the cameras from royalties.  *See id.*, Ex. J at Interrog. Resp. No. 3.  By Kodak's definition, however, where Altek's received "net sales" are less than the "open market price," (as they must be to qualify for exemption under Section 4.14) the transaction cannot be an arm's-length transaction.  As Kodak has repeatedly stated, the "open market price" is the "arm's length" price, *i.e.,* they are one and the same.  *Id*., Ex. E at 116:7-9

---

[6] Notably, Kodak attempts to rely on these two provisions in support of its interpretation of "open market price," despite the fact that its interpretation renders the provisions irreconcilable.

("open market price is always an arm's length sale price in a given market.").[7]  Where a

transaction is not at the arm's-length price, Section 1.13(b) applies:

> in the case of a sale or disposal of an OEM Licensed Product
> which has not been sold in an arms-length [sic] transaction, Net
> Sales shall mean Altek's open market price" for such OEM
> Licensed Product . . . .

Metanat Decl. Ex. C, § 1.13(b)(2).  Under Kodak's interpretation, then, Altek's "net sales" could

never be "less than fifty-percent (50%) of the open market price" because Section 1.13(b)(2)

automatically increases the "net sales" to be the same as the "open market price."

For example, applying Kodak's interpretation, if Altek sold a camera where Altek's "net

sales" were less than fifty percent of the "open market price," Altek should benefit from the

Section 4.14 exemption.  Because the transaction price is less than the "open market price,"

however, Kodak's interpretation negates Section 4.14 because Section 1.13(b)(2) resets Altek's

"net sales" to the "open market price."  Altek loses the Section 4.14 exemption because its "net

sales" now equal the "open market price."  Altek could never obtain the Section 4.14 exemption;

the Section 4.14 exemption is ineffective.  Such an interpretation should be rejected.  *Isaacs v.*

*Westchester Wood Works, Inc*., 718 N.Y.S.2d 338 (N.Y. App. Div. 2000) (an interpretation that

has the effect of rendering at least one clause superfluous or meaningless is not preferred and

should be avoided if possible); *see also Bestform, Inc. v. Herman*, 804 N.Y.S.2d 80 (N.Y. App.

Div. 2005) (a court should construe an agreement to avoid a result that is commercially

unreasonable).

### D.    Altek's Interpretation Of "Open Market Price" Is The Only Reasonable Interpretation

Unlike Kodak's interpretation, applying a "retail price" definition to "open market price,"

---

[7] *See also, id*., Metanat Decl. Ex. E at 119:12-15; 121:19-22; 124:19-25; 126:4-5; 146:19-21; 190:21-191:7; 222:8-13.

is reasonable, consistent, and fair throughout the PLA—including Sections 1.13(b) and 4.14.

*Sutton v. E. River Sav. Bank*, 435 N.E.2d 1075, 1078 (N.Y. 1982).  Indeed, general canons of

contract construction require that when two conflicting provisions can be reconciled, a court is

required to do so and give effect to both.  *HSBC Bank USA v. Nat'l Equity Corp.*, 719 N.Y.S.2d

20 (N.Y. App. Div. 2001); *Seabury Constr. Corp. v. Jeffery Chain Corp.*, 289 F.3d 63, 70 (2d

Cir. 2002).  Altek's interpretation complies with the general canon that terms have the same

meaning throughout the document.  *Maryland Cas. Co. v. W.R. Grace and Co.*, 128 F.3d 794,

799 (2d Cir. 1997).  Altek's interpretation gives "open market price" the same interpretation in

Sections 1.13 and 4.14, all the sections where "open market price" appears.  Altek's

interpretation is also the plain and ordinary meaning.  *American Express Bank Ltd. v. Uniroyal,*

*Inc.,* 562 N.Y.S.2d 613, 614 (N.Y. App. Div. 1990); *CCG Assocs. I*, 556 N.Y.S.2d at 862 (a

court should enforce the plain meaning of an agreement rather than rewrite it).

Altek's is the only interpretation that gives "full meaning and effect" to all provisions of

the PLA, including Sections 4.14 and 1.13.  Under New York law, an interpretation that gives a

reasonable and effective meaning to all the terms of the contract is preferable to one that leaves a

part unreasonable or of no effect.  *Ruttenberg v. Davidge Data Sys. Corp.*, 626 N.Y.S.2d 174,

177 (N.Y. App. Div. 1995); *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d

Cir. 1985).  For example, applying Altek's interpretation, where the "net sales" received by

Altek are more than fifty percent of the "retail price" of a camera, Section 4.14 would not apply

to exempt the payment of royalties.  Where, however, Altek's received "net sales" are less than

fifty percent of the "retail price," the cameras are exempt under Sections 4.14 and 1.13.[8]  A

"retail price" definition of "open market price" is the only interpretation that is reasonable,

---

[8] To the contrary, under Kodak's interpretation of "open market price," Section 4.14 could never
apply to exempt Altek from royalties, regardless of the circumstance.

consistent, and fair throughout the entire PLA.  *Sutton*, 435 N.E.2d at 1078.

### E.        Kodak Cannot Demonstrate Issues Of Material Fact With Respect To The Interpretation Of "Open Market Price"

As Altek has established, the only reasonable interpretation of "open market price" is "retail price."  Conversely, Kodak's interpretation of "open market price" creates contradictions within the PLA and is unreasonable.

### 1.        "Open Market Price" Is Unambiguous

It is well settled that if a contract admits only one reasonable interpretation, it is unambiguous and will be enforced as written as a matter of law.  *K. Bell & Assocs.,* 97 F.3d at 637; *Third Ave. Trust v. SunTrust Bank*, 166 F. Supp. 2d 783, 787 (S.D.N.Y. 2001).  Kodak has failed to establish a competing, reasonable interpretation of "open market price"; its interpretation creates unreasonable contradictions amongst the PLA's provisions and unreasonably renders Section 4.14 ineffective.  *See supra* Part III.C.  As the only reasonable interpretation of "open market price" is a "retail price," "open market price" is not ambiguous. *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996) (citing *Mandelblatt v. Devon Stores, Inc.,* 521 N.Y.S.2d 672, 675 (N.Y. App. Div. 1987).  Where a contract is unambiguous, it must be interpreted according to its plain meaning.  *CCG Assocs. I*, 556 N.Y.S.2d at 862.

### 2.        As "Open Market Price" Is Unambiguous, Extrinsic Evidence Is Not Permitted To Aid In Its Interpretation

Where a term is unambiguous, extrinsic evidence is inadmissible to aid in its interpretation.  *Int'l Multifoods*, 98 F. Supp. 2d at 505.  Moreover, the parties are precluded from introducing extrinsic evidence in an attempt to ***create*** an ambiguity in the agreement.  *W.W.W. Assocs.,* 566 N.E.2d at 643 (permitting a party to introduce extrinsic evidence to rewrite a

13

bargain that has already been struck "unnecessarily denigrates the contract and unsettles the law."). Ambiguity is determined within the four corners of the document; it may not be created by extrinsic evidence that the parties intended a meaning different than that expressed in the agreement. *Innophos, Inc. v. Rhodia, S.A.*, 882 N.E.2d 389, 391 (N.Y. 2008). Therefore Kodak may not enter extrinsic evidence to support its interpretation of "open market price."

In addition, Kodak may not introduce extrinsic evidence in support of its interpretation because that interpretation creates contradictions amongst provisions of the PLA. *A.H.A. Gen. Constr. v. New York City Hous. Auth.*, 92 N.Y.2d 20 (1998) (extrinsic evidence cannot "be introduced to alter, vary, or contradict the clear and unambiguous terms."); *Tobin v. Union News Co.*, 239 N.Y.S.2d 22 (N.Y. App. Div. 1963) (extrinsic evidence "may be shown for the purpose of elucidation but not for contradiction or modification.").

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion for Partial Summary Judgment on the interpretation of "open market price."

14

Dated: February 1, 2013                                      ORRICK, HERRINGTON & SUTCLIFFE LLP

                                                             By:      */s/ Morvarid Metanat*
                                                                      Michael F. Heafey (admitted *pro hac vice*)
                                                                      Morvarid Metanat (admitted *pro hac vice*)
                                                                      1000 Marsh Road
                                                                      Menlo Park, CA  94025-1021
                                                                      (650) 614-7400
                                                                      mheafey@orrick.com
                                                                      mmetanat@orrick.com

                                                                      Lisa T. Simpson
                                                                      51 W. 52nd Street
                                                                      New York, NY  10019-6142
                                                                      (212) 506-5000
                                                                      lsimpson@orrick.com

                                                             ATTORNEYS FOR DEFENDANT
OHSUSA:752818128.8                                           ALTEK CORPORATION

OHSUSA:752818128.9
                                    15