REDACTED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>                Plaintiff,<br><br>        v.<br><br>ALTEK CORPORATION,<br><br>                Defendant. | Case No. 12-CV-246 (DLC) |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF EASTMAN KODAK COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE VALIDITY AND INTERPRETATION OF THE PLA**

Pursuant to L.R. 56.1, Eastman Kodak Company ("Kodak") respectfully submits the following Statement of Undisputed Material Facts in support of its Motion for Partial Summary Judgment regarding the validity and interpretation of the parties' July 1, 2004 Patent License Agreement ("PLA").

**I.   The Interpretation of "Open Market Price" In Section 4.14 of the PLA**.

1.      Kodak and Altek entered the PLA on July 1, 2004. (Ex. 1, PLA at 1; § 1.5.)[1]

2.      Under the PLA, Altek obtained rights to Kodak's entire digital camera patent portfolio. (*Id.* at §§ 1.8 ("'Kodak Patents' shall mean all classes or types of patents … in all countries of the world which are owned or licensable by Kodak…"), 3.1(a) "Subject to the obligation of Altek to make the [royalty] payment as specified in Article 4 hereof, Kodak … hereby grants and agrees to grant to Altek … a non-exclusive, non transferrable license … to

---

[1] Exhibits 1-10 refer to exhibits to the Declaration of Jonathan W. Woodard filed in support of Kodak's Motion for Partial Summary Judgment.

practice any method or process involved in the manufacture, testing or use [of Licensed Products], under Kodak Patents.").)

3. In return, Altek agreed to pay royalties for its use of Kodak's patented digital camera technology. (*Id*. at § 4.2(a) ("… it is agreed that Altek shall pay to Kodak a commuted royalty…").)

4. Altek is licensed under the PLA to sell digital cameras as an Original Equipment Manufacturer ("OEM") to customers that re-sell the cameras under their own brand name. These are referred to as "OEM Licensed Products." (*Id*. at § 1.14.)

5. The PLA defines "Net Sales" of OEM Licensed Products as the total revenues that Altek receives from an arms-length sale. (*Id*. at § 1.13(b)(1) ("In the case of an arms length sale or other disposal of an OEM Licensed Product… Net Sales shall mean the total net revenue received by Altek and its Subsidiaries resulting from the sale or placement of such OEM Licensed Product...").)

6. The PLA states that Altek must pay a ▇▇▇▇ royalty on the "Net Sales" of its digital cameras to OEMs. (*Id.* at § 4.2.)

7. Section 4.14 provides that Altek need not pay royalties when it makes OEM sales on a "contract assembly" basis. This occurs when the revenues that Altek receives from an OEM sale are less than 50 percent of the "open market price" of its digital cameras. (*Id*. at § 4.14.)

8. The PLA first mentions "open market price" in Section 1.13. Section 1.13 refers to *Altek's* open market price:

> In the case of a sale or disposal of a [licensed product] that has not been sold in an arms length transaction, Net Sales [subject to the royalty requirement] shall mean

REDACTED

> ***Altek's open market price*** for such [ ] Product in the country of sale on the date when such sale occurred . . . .

(*Id.* at § 1.13(b)(2) (emphasis added).)

9. In Section 4.14, the PLA then refers to "***the*** open market price":

> This paragraph is intended to exclude from OEM Licensed Products those Digital Cameras that Altek makes or sells on a 'contract assembly' basis, as defined below. For purposes of this Agreement a Digital Camera is a 'Contract Assembly Digital Camera' if and only if the Net Sales collected or received by Altek for said Digital Cameras is less than fifty-percent (50%) of ***the*** open market price . . .

(*Id.* at § 4.14 (emphasis added).)

10. It is undisputed that "the open market price" referenced in Section 4.14 has the same meaning as "Altek's open market price" in Section 1.13. (Ex. 2, Lin Dep. Tr. at 201:18-22 ("Q: Now—and it's your position—it's Altek's position that open market price in 1.13 means the same thing as open market price in paragraph 4.14, correct? A: Yes.").)

11. Altek's only market is the OEM market. It only sells digital cameras to OEM customers and has never sold digital cameras to the retail market. (*Id.* at 64:20-22 ("Q. Was Altek selling any digital cameras directly to the end users? A. No, never.").)

12. The PLA never mentions "retail price" or the "retail market."

13. Altek asserts that under its interpretation of "open market price" as "retail price," almost all of its digital camera sales qualify as "contract assembly sales" under Section 4.14. In the second quarter of 2011, for example, Altek made more than ▮▮▮▮▮▮ selling digital cameras. But it claimed that every single sale could be excluded. (Ex. 6, Altek Q2 2011 Royalty Statement.)

## II. The Validity of the PLA

14. Before Kodak filed its complaint in this case, Altek never asserted that the PLA was invalid. (Ex. 3, Altek's Second Supplemental Response to Kodak's Request for Admission No. 2.)

15. Before Kodak filed its complaint in this case, Altek never informed Kodak that its Board of Directors had not approved the PLA. (Ex. 3, Altek's Second Supplemental Response to Kodak's Request for Admission No. 1; Ex. 2, Lin Dep. Tr. at 125:8-14 ("Q So you -- no one from Altek ever told Kodak that its board had never approved the final version of the patent license agreement, right? [Objection by Altek counsel] A. Yes, because no one in Kodak ever asked that question to Altek.").)

16. Section 9.1 of the PLA provides that Altek must obtain any required Board of Director Approval no later than June 30, 2004:

> This Agreement is made subject only to the approval of Altek's Board of Directors in accordance with the by-laws of the corporation. Such Board approval shall not be unreasonably withheld, ***nor shall it be delayed beyond June 30, 2004 local time***.

(Ex. 1, PLA at § 9.1 (emphasis added).)

17. The PLA was executed as of July 1, 2004—the day after the deadline for Altek to obtain any required Board of Director approval. (*Id*. at § 1.5 (effective date of the PLA is July 1, 2004); *id*. at 20 ("[T]he parties have caused their respective corporate names to be affixed hereto and this instrument to be signed by their duly authorized officers, all as of the day and year first above written.").)

18. Altek's only explanation for allegedly failing to obtain Board of Director approval is that it forgot to submit the PLA to its Board. (Ex. 2, Lin Dep. Tr. at 124:14-21 ("Final version

for some reason, I don't know, nobody remembered, was not sent in for approval."); *see also id.* at 123:12-19 ("[I]t was forgotten to send it [to the Board]").)

19. Since 2004, Altek "has been behaving as if there's a contract" and has paid royalties to Kodak (although Kodak contends that Altek has not correctly paid those royalties). (*Id.* at 153:6-13 ("Q. … But we can both agree that between 2004 and 2011, Altek paid royalties to Kodak under the patent license agreement, correct? [Objection by Altek Counsel] A. Altek has been behaving as if there's a contract. Based on that document we need to make report and pay.").)

20. In January 2005, Altek's president, Alex Hsia, publicly stated that Kodak and Altek "entered a license agreement" that required Altek to pay royalties.  " (Ex. 10, January 31, 2005 Letter from Altek to Digitimes Publications ("Kodak and Altek have entered a license agreement for digital cameras. Pursuant to that agreement all licensed products sold by Altek are royalty bearing to Kodak with the exception of sales to Kodak itself.").)

21. In 2006, Altek entered two written amendments to the PLA which state that terms of the PLA "remain in full force and effect." (Ex. 4, Amendment 1 to the PLA; Ex. 5, Amendment 2 to the PLA.)

22. In 2010, Altek submitted to an audit of its royalty payments under the PLA. (Ex. 7, KPMG Audit Report.)

Dated: February 1, 2013
   New York, New York    */s/ Robert J. Gunther, Jr.*

                 Robert J. Gunther, Jr.
                 WILMER CUTLER PICKERING HALE & DORR LLP
                 7 World Trade Center
                 250 Greenwich Street
                 New York, NY 10007

**REDACTED**

    Tel: (212) 230-8800
    Fax: (212) 230-8888
    robert.gunther@wilmerhale.com

    Michael J. Summersgill (admitted *pro hac vice*)
    Jordan L. Hirsch (admitted *pro hac vice*)
    Jonathan W. Woodard (admitted *pro hac vice*)
    WILMER CUTLER PICKERING HALE & DORR LLP
    60 State Street
    Boston, Massachusetts 02109
    Tel: (617) 526-6000
    Fax: (617) 526-5000
    michael.summersgill@wilmerhale.com
    jordan.hirsch@wilmerhale.com
    jonathan.woodard@wilmerhale.com

    *Attorneys for Eastman Kodak Company*