UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>ALTEK CORPORATION,  )<br>)<br>Defendant.  )<br>) | Case No. 12-CV-246 (DLC) |

**EASTMAN KODAK COMPANY'S OPPOSITION TO ALTEK CORPORATION'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Robert J. Gunther, Jr.
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
robert.gunther@wilmerhale.com

Michael J. Summersgill (*pro hac vice*)
Jordan L. Hirsch (*pro hac vice*)
Jonathan W. Woodard (*pro hac vice*)
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
michael.summersgill@wilmerhale.com
jordan.hirsch@wilmerhale.com
jonathan.woodard@wilmerhale.com

*Attorneys for Eastman Kodak Company*

Eastman Kodak Company ("Kodak") respectfully submits this opposition to Altek Corporation's (Altek's) motion for partial summary judgment. (Dkt. No. 52.)

## I.     INTRODUCTION

Altek's motion confirms that *Kodak's* motion for summary judgment should be granted. Altek agrees in its motion that the interpretation of the term "open market price" as used in the contract assembly provision of the PLA: (i) is a question of law (Dkt. No. 58, Altek Br. at 1); (ii) should be resolved without reference to extrinsic evidence (*id.*); and (iii) is properly decided on summary judgment (*id* at 4-5). Accordingly, the only dispute in the parties' competing motions is who should prevail on summary judgment. The plain language of the PLA makes clear that Kodak's interpretation of "open market price" is correct.

Altek's argument that "open market price" should be interpreted to mean "retail price" is wrong for at least the following reasons:

- *First*, Altek cannot point to a ***single provision*** in the PLA that supports its interpretation. Indeed, it is undisputed that the PLA never refers to "retail price," the "retail market," sales to retail consumers, or the prices that third parties charge on the retail market.

- *Second*, Altek's interpretation is directly contrary to the plain language of the PLA. The first time the PLA refers to the "open market price" (in Section 1.13), it states that the term refers to "***Altek's*** open market price." Altek admits that the "open market price" referenced in the contract assembly provision (Section 4.14) has the same meaning. But it is undisputed that Altek does not sell (and has never sold) digital cameras on the retail market. "***Altek's*** open market price" as used in Sections 1.13 and 4.14 therefore ***cannot*** be the "retail price."

- *Third*, interpreting "open market price" to mean the retail price would eviscerate the purpose of the PLA. According to Altek, essentially all of Altek's sales over the course of the term of the PLA would fall under the contract assembly exception. But the PLA states that the contract assembly provision is an exception, not the rule.

The proper interpretation of "open market price"—as set forth in Kodak's summary judgment motion (Dkt. No. 62, Kodak Br. at 9-10)—is instead the price that *Altek* receives when

it makes a sale to its commercial customers. The PLA's explicit reference to "*Altek's* open market price" confirms that it is a price that Altek receives as opposed to the price that retailers receive when they make sales to the ultimate consumer. Accordingly, as set forth below and in Kodak's motion for summary judgment, Kodak respectfully requests that the Court deny Altek's motion for summary judgment and grant Kodak's motion.[1]

## II.  ARGUMENT

### A.  The Parties Agree That This Dispute Is Properly Resolved On Summary Judgment.

The parties' only dispute is the proper interpretation of the term "open market price" as used in the contract assembly provision of Section 4.14 of the PLA. Altek takes the position in its brief that: the interpretation of the term "open market price" is a question of law (Dkt. No. 58, Altek Br. at 1 ("[the] interpretation of 'open market price' is a question of law")); the meaning of "open market price" is unambiguous (*id.* ("'open market price' is unambiguous")); the Court should not consider extrinsic evidence to interpret "open market price" (*id.* ("extrinsic evidence may not be admitted"); and that the parties' dispute is ripe for summary judgment (*id.* at 4-5). Accordingly, the parties agree that the meaning of "open market price" should be resolved on summary judgment. *See Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) ("The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment").

### B.  Altek's Argument That "Open Market Price" Means "Retail Price" Is Contrary To The Plain Language Of The PLA.

Altek argues that the contract assembly exception in Section 4.14—which excuses Altek from paying royalties only when it receives less than fifty percent of its "open market price"—

---

[1] The factual background supporting Kodak's interpretation of "open market price" is set forth in detail in Kodak's summary judgment motion (Dkt. No. 62, Kodak Br. at 3-8).

allows it to avoid paying royalties whenever it receives less than fifty percent of the "retail price" of a digital camera. Altek's attempt to rewrite "open market price" as "retail price" should be rejected.

***First,*** Altek cannot point to a single provision of the PLA that supports its "retail price" interpretation. Indeed, it is undisputed that the PLA never uses the terms "retail," "retail price," "retail market," or "retail customer." Instead, Altek relies on a dictionary definition—*not* of the term "open market price"—but of the word "retail." Altek argues that because "retail" is defined as the "sale to the public of goods," the term "open market price" must refer to the retail market. (Dkt. No. 58, Altek Br. at 6-7.) But one does not follow the other. Altek's argument is premised on the unsupported assumption that the only open market is the retail market. However, the term "open market" is defined to include many markets—such as the commodities markets, securities markets, and the foreign currency markets—other than the retail market. (*See* Ex. 1, ENCYCLOPEDIA OF BANKING AND FINANCE, "Open Market" (Glenn G. Munn, *et al*. eds., 9th ed. 1991) (defining "open market" as "a broad and freely competitive market, a market which is open to many buyers and sellers and in which prices (whether commodities, securities, or money rates) are determined by such competition.").)[2] By referring to the price that Altek charges its commercial customers as an "open market price" (Dkt. 64-1, PLA § 1.13(b)(2)), the PLA specifically presumes that the commercial market for digital cameras *is* an open market

***Second,*** the plain language of the PLA makes clear that the term "open market price" refers to *Altek's* open market price to its commercial customers, not to the retail price charged by others to the ultimate consumers. The first time the PLA uses the term "open market price" (in Section 1.13) it refers to *Altek's* open market price:

---

[2] "Ex. 1" refers to Exhibit 1 to the Declaration of Jonathan W. Woodard in support of Kodak's Opposition to Altek's Motion for Partial Summary Judgment..

> In the case of a sale or disposal of an OEM Licensed Product which has not been sold in an arms length transaction, Net Sales shall mean **Altek's open market price** for such OEM Licensed Product ….

(*Id*. (emphasis added).)  Section 4.14, (the provision at issue in this dispute) then refers to the "*the*" open market price making clear that it is referring to the same "open market price" referenced earlier in Section 1.13 (*i.e. Altek's* price).  (*Id*. at § 1.14 ("… a Digital Camera is a 'Contract Assembly Digital Camera' if and only if the Net Sales collected or received by Altek for said Digital Cameras is less than fifty percent (50%) of *the* open market price.") (emphasis added)); *see Post v. Killington, Ltd.*, 424 F. Appx. 27, 29-30 (2d Cir. 2011) (use of "the corporation" as opposed to "a corporation" refers back to the previously identified corporate owners).  Altek itself concedes that "open market price" must have the same meaning in both Section 1.13 and Section 4.14.  (*See* Dkt. No. 58, Altek Br. at 7-9; Dkt. No. 64-2, Lin Dep. Tr. at 201:18-22 ("Q: Now -- and it's your position -- it's Altek's position that open market price in 1.13 means the same thing as open market price in paragraph 4.14, correct?  A: Yes").)

It is undisputed that Altek does not sell digital cameras to the retail market but instead only sells to its commercial customers. (Dkt. No. 64-2, Lin Dep. Tr. at 64:20-22 ("Q. Was Altek selling any digital cameras directly to the end users?  A. No, never.").)  As a result, "***Altek's*** open market price" cannot be a retail price—it is instead the price that *Altek* charges its commercial customers.  *See First Serv. Fin. Inc. v. City Lights at Queens Landing, Inc*., No. 08 Civ. 3312, 2009 WL 750190, *3-4 (S.D.N.Y. Mar. 20, 2009) (rejecting proposed contract interpretation inconsistent with the plain language of the contract).

Confirming this, Section 1.13 uses "open market price" as a proxy for the price that Altek would receive through its typical sales to a commercial customer on the OEM market. Specifically, Section 1.13 states that: (i) when Altek makes an arm's length sale, it should use the price that it actually receives to calculate royalties (Dkt. No. 64-1, PLA § 1.13(b)(1) ("In the case

of an arms length sale … Net Sales shall mean the total net revenue received by Altek…")); but (ii) when Altek makes a non-arm's length sale, Altek should instead use its "open market price" to calculate royalties (*id.* at § 1.13(b)(2) ("In the case of a sale or disposal of an OEM Licensed Product which has not been sold in an arms length transaction, Net Sales shall mean ***Altek's open market price***…") (emphasis added).)  The open market price is thus intended to approximate the price that Altek would have charged its commercial customer had it been an arm's length transaction.  Accordingly, in the context of the PLA, the open market price is plainly a price charged to Altek's commercial customers.

If "open market price" were "retail price," as Altek contends, Section 1.13 would make little sense. When Altek makes a non-arm's length sale, it would use a third party *retail* price as a proxy for the price that it would have received for a *non-retail sale to an OEM customer*.  There is simply no support in the PLA for this interpretation.  Indeed, Altek's own actions over the past eight years confirm that its "retail price" argument is not based in the language of the PLA.  The PLA was executed in July 2004. (*Id.* at 1 ("This Agreement is made as of the 1st day of July, 2004…").)  But at no point since the PLA was executed has Altek *ever* paid royalties using the retail price of its digital cameras. (Dkt. No. 64-2, Lin Dep. Tr. at 196:13-15 ("Q. Altek doesn't pay royalties based on revenues received from retail sales, correct? A. Correct.").)  Instead, the first time that Altek ever asserted that it could use the retail price to calculate royalties was after this dispute began.  Altek's litigation-driven contract interpretation, manufactured years after the PLA was executed, should be rejected.

***Finally***, Altek's interpretation of "open market price" cannot be squared with the purpose and intent of the PLA.  Section 4.10 of the agreement states that the parties intended for Altek to pay royalties on *all* digital camera sales, subject to limited exceptions. (Dkt. No. 64-1, PLA §

4.10 ("It is intended that under this Agreement Altek shall pay a royalty on **all** Digital Cameras sold or transferred by Altek…") (emphasis added).)  But according to Altek, under its interpretation of "open market price," nearly all of its digital camera sales would be exempt from the royalty requirement.  In the second quarter of 2011, for example, Altek claimed that ***every single*** digital camera that it sold could be excluded under the contract assembly provision and paid no royalties to Kodak.  (Dkt. No. 51-6, Altek Q2 2011 Royalty Statement.)

If this were the correct reading of the PLA, the royalty provisions of the PLA would be essentially meaningless, Section 4.10 would have no effect, and there would have been no reason for the parties to enter the PLA to begin with.  *See  Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 624 (S.D.N.Y. 2010) ("Under New York (and every other state's) law, parties are not free to interpret a contract in a way that frustrates the purpose of that contract or that makes any provision of the contract meaningless.").

### C. Altek's Criticism of Kodak's Proposed Interpretation Is Fundamentally Flawed.

As set forth in detail in Kodak's summary judgment motion, the PLA makes clear that "open market price" refers to the price that *Altek* receives from a typical sale to its OEM customers.  (Dkt. No. 62, Kodak Br. at 9-10.)  Altek asserts that Kodak's proposed interpretation is wrong because Section 4.14 would allegedly ***never*** apply under Kodak's interpretation.  (Dkt. No. 58, Altek Br. at 9-11.)  This is incorrect.

Altek argues that: (i) under Kodak's interpretation, where the amount that Altek receives is less than the open market price, the sale cannot be considered an arm's length sale because Kodak has taken the position that "open market price" is an arm's length price; (ii) under Section 1.13, where a sale is not arm's length, the price that Altek must use to calculate royalties is automatically increased to Altek's open market price; and (iii) as a result, Section 4.14 will never

apply because the price that Altek uses to calculate royalties will always be increased back to the open market price (and thus can never be less than fifty percent of the open market price). (*Id.* at 9-11.) Altek's argument rests on the unsupported assumption that it is not possible to have an arm's length sale that is below the open market price. But this is incorrect: just because all open market sales are arm's length does not mean that all sales at less than the open market price are not arm's length. In other words, contrary to Altek's assumption, it is possible to have an arm's length sale at less than the open market price.

Altek's contract assembly sales provide the most relevant example. Under the PLA, Altek can perform contract assembly (by simply assembling parts supplied by its customer) and sell a digital camera for less than its typical price. This would still be an arm's length sale. The contract assembly provision in Section 4.14 would then apply whenever Altek makes such a sale for less than fifty percent of its open market price. (Dkt. No. 64-1, PLA § 4.14.) Altek is therefore wrong that Section 4.14 could never apply under Kodak's interpretation.

### III. CONCLUSION

The parties agree that this dispute—the proper interpretation of the PLA term "open market price"—is one that should be resolved on summary judgment. The PLA's reference to "***Altek's*** open market price" confirms that the term refers to the price that Altek charges to its commercial customers. Altek's opposing arguments are directly contrary to the PLA. For these reasons, and the reasons set forth in Kodak's opening summary judgment brief, Altek's motion for summary judgment should be denied and Kodak's summary judgment motion should be granted.

Dated: February 15, 2013
      New York, New York     */s/ Robert J. Gunther, Jr.*
                                            Robert J. Gunther, Jr.
                                            WILMER CUTLER PICKERING HALE & DORR LLP

7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
robert.gunther@wilmerhale.com

Michael J. Summersgill (admitted *pro hac vice*)
Jordan L. Hirsch (admitted *pro hac vice*)
Jonathan W. Woodard (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
michael.summersgill@wilmerhale.com
jordan.hirsch@wilmerhale.com
jonathan.woodard@wilmerhale.com

*Attorneys for Eastman Kodak Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>                      Plaintiff,<br><br>              v.<br><br>ALTEK CORPORATION.<br><br>                      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 12-CV-246 (DLC)<br>)<br>)<br>)<br>)<br>) |

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of February, 2013, I caused Plaintiff Eastman Kodak Company's Opposition to Altek Corporation's Motion for Partial Summary Judgment, and all supporting papers, including Kodak's Response to Altek's Statement of Undisputed Material Facts, Declaration of Jonathan Woodard, and Exhibits thereto to be served on all attorneys of record through the Court's ECF system.

                                              By:  */s/ Robert J. Gunther, Jr.*