UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

EASTMAN KODAK COMPANY,

                Plaintiff,

          v.

ALTEK CORPORATION,

                Defendant.

_____

Case No. 12-CV-246 (DLC)

**EASTMAN KODAK COMPANY'S RESPONSE TO ALTEK CORPORATION'S
STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to L.R. 56.1, Eastman Kodak Company ("Kodak") respectfully submits the

following response to Altek Corporation's ("Altek") Statement of Undisputed Material Facts in

support of Altek's Motion for Partial Summary Judgment (Dkt. No. 59).

1.     Altek is a Taiwanese manufacturer of digital cameras. Declaration of Alex Hsia in

Support of Altek's Motion for Partial Summary Judgment ("Hsia Decl."), ¶ 3.

**KODAK'S RESPONSE**:  Undisputed.

2.     Altek manufactures digital cameras for third parties according to the hardware

specifications, and proprietary software and hardware that they provide. *Id.*

**KODAK'S RESPONSE**:  It is undisputed that Altek manufactures digital

cameras for third parties. However, the remainder of Altek's statement is not material to the

interpretation of the terms of the parties' July 1, 2004 patent license agreement ("PLA") at issue

in Altek's summary judgment motion.  This is extrinsic evidence that Altek itself admits the

Court need not consider. (Dkt. No. 58, Altek Br. at 1 ("extrinsic evidence may not be admitted

because 'open market price' is not ambiguous…").)  In any event, Kodak disputes Altek's statement to the extent it asserts that Altek's manufacture of digital cameras for third parties is "according to the hardware specifications, and proprietary software and hardware that they provide,"  because that information is outside the scope of targeted discovery permitted by the Court, (Dkt. No. 36, June 25, 2012 Discovery Order at 1-4), and has not been provided to Kodak.

3.      Altek never sells the same camera to more than one customer. *Id*.

**KODAK'S RESPONSE**: Altek's contention regarding which cameras it sells to its customers is not material to the interpretation of the PLA terms at issue in Altek's summary judgment motion.  In any event, Kodak disputes this statement.  While this information is outside the scope of targeted discovery permitted by the Court (Dkt. No. 36, June 25, 2012 Discovery Order at 1-4), publicly available information shows that Altek sells the same or similar camera models to multiple customers.  For example, Altek features a camera on its website (Ex. 2, printout from www.altek.com.tw (last accessed February 14, 2013)) that is sold by several different companies, including Praktica (Ex. 3, printout from www.praktica.de (last accessed February 14, 2013); Kenko, (Ex. 4, printout from www.kenko-tokina.co.jp (last accessed February 14, 2013); and AIGO (Ex. 5, printout from www.lightinthebox.com (last accessed February 14, 2013)).[1]

4.      Altek's customers directly or through a chain, sell the manufactured cameras to consumers. *Id*., ¶ 4.

**KODAK'S RESPONSE**: Undisputed.

---

[1]      "Exs. 2-6" refer to exhibits to the Declaration of Jonathan W. Woodard in support of Kodak's Opposition to Altek's Motion for Partial Summary Judgment.

5.      With the exception of "Altek Branded Cameras," Altek does not sell cameras directly to consumers. *Id.*

**KODAK'S RESPONSE**:  It is undisputed that Altek does not sell cameras directly to consumers.  As confirmed by Altek's corporate designee, it is undisputed that Altek has ***never*** sold ***any*** digital cameras directly to consumers. (Dkt. No. 64-2, Lin Dep. Tr. at 64:20-22 ("Q. Was Altek selling any digital cameras directly to the end users?  A. ***No, never***."); *id.* at 65:7-10 ("Q. [Altek] doesn't sell its digital cameras to retail customers, correct?  A.  There's ***always*** one company … between us and the end consumer.") (emphasis added).)

6.      Kodak has been an Altek customer since 2002. *Id.*, ¶ 5.  In 2003, Kodak became one of Altek's major customers. *Id.*

**KODAK'S RESPONSE**:  Altek's characterization of its business relationship with Kodak is not material to the interpretation of the PLA terms at issue in Altek's summary judgment motion.  It is undisputed that Altek has supplied cameras to Kodak.  Altek's characterization of Kodak as a "major" customer is argument and not an assertion of fact to which a response is required.

7.      In 2001, Kodak accused Altek of patent infringement. *Id.*, ¶ 6.

**KODAK'S RESPONSE**: Altek's statement that it was "accused … of patent infringement" is not material to the interpretation of the PLA terms at issue in Altek's summary judgment motion.  It is in any event undisputed that Kodak approached Altek regarding a patent license in 2001.

8.     Kodak threatened to cease all business with Altek if it did not enter into a license. Declaration of Morvarid Metanat in Support of Altek Corporation's Motion for Partial Summary Judgment ("Metanat Decl."), Exs. A & B.

**KODAK'S RESPONSE**:  Altek's contention that it was "threatened" by Kodak is not relevant to the interpretation of the PLA terms at issue in Altek's summary judgment motion.  This is extrinsic evidence that Altek itself admits the Court need not consider. (Dkt. No. 58, Altek Br. at 1 ("extrinsic evidence may not be admitted because 'open market price' is not ambiguous…").)  Kodak nevertheless disputes that it ever threatened Altek during license negotiations.  (Ex. 6, Pagano Dep. Tr. at 29:16-22.)

9.     Fearing that it would lose Kodak's business and ultimately go out of business, Altek entered into negotiations with Kodak to license Kodak's patents. Hsia Decl., ¶ 7.

**KODAK'S RESPONSE**:  Altek's motivation for entering the PLA is not relevant to the interpretation of the PLA terms at issue in Altek's summary judgment motion.  This is extrinsic evidence that Altek itself admits the Court need not consider. (Dkt. No. 58, Altek Br. at 1 ("extrinsic evidence may not be admitted because 'open market price' is not ambiguous…").) In any event, Kodak disputes this statement.  The PLA itself confirms that Altek entered into negotiations for a license to Kodak's patents because it wanted access to Kodak's technology:

> WHEREAS, Altek wishes to manufacture, have manufactured and sell Digital Cameras and for that purpose has requested non-exclusive licenses under Kodak's Digital Camera patents …

(Dkt. No. 64-1, PLA at 1.)

10.     At the beginning of the parties' negotiations, Kodak drafted a license agreement which permitted Altek the use of its patents for the manufacture of digital cameras for third

parties. Metanat Decl. Ex. K, §§ 1.14 & 3.1 and Ex. E at 40:14-41:18. These products are referred to as "OEM Licensed Products." Id., Ex. C, § 1.14; Ex. K § 1.14.

**KODAK'S RESPONSE**:  It is undisputed that Altek is licensed under the PLA to sell OEM Licensed Products (Dkt. No. 64-1, PLA § 3.1), and that "OEM Licensed Products" are defined as "Licensed Product sold or otherwise disposed of under tradename or trademark that is owned by a third party." (*Id*. at § 1.14).  It is also undisputed that Altek is permitted under the PLA to manufacture OEM Licensed Products in exchange for royalty payments to Kodak. (*Id*. at §§ 3.1, 4.2.)  The remainder of Altek's statement is not material to the interpretation of the PLA terms at issue in Altek's summary judgment motion.  Whether "Kodak drafted a license agreement … [a]t the beginning of the parties' negotiations" is extrinsic evidence that Altek admits the Court need not consider. (Dkt. No. 58, Altek Br. at 1 ("extrinsic evidence may not be admitted because 'open market price' is not ambiguous…").)  In any event, the only evidence is that PLA was the result of a negotiation between Kodak and Altek. (*See* Dkt. No. 53-1, Pagano Dep. Tr. at 86:5-87:2 ("[T]he provisions [of the PLA] were obviously negotiated by the parties.").)  During the negotiation, Kodak supplied drafts of the PLA for review by Altek, and Altek provided feedback and drafts of the PLA to Kodak.  (*Id.* (the parties exchanged drafts of the PLA "in red-line form that incorporated comments from Altek or ATLC or Kodak …").

11.     Under the PLA, Altek is responsible for making royalty payments on all of its digital camera sales, with a few exceptions. *Id*., §§ 4.10, 4.12 & 4.14.

**KODAK'S RESPONSE**:  It is undisputed that Altek is required to pay royalties on all digital camera sales, unless its sales meet the explicit requirements of one of three exceptions under the terms of the PLA. (*See* Dkt. No. 64-1, PLA §§ 4.3, 4.12, 4.14.)

12.     Section 4.14 provides that Altek is exempted from royalty payments on cameras it sells on a "Contract Assembly" basis. The "Contract Assembly" exemption applies "if the Net Sales collected or received by Altek for [digital cameras] is less than fifty percent (50%) of the open market price . . . ." *Id.*, § 4.14

> **KODAK'S RESPONSE**:  It is undisputed that Section 4.14 of the PLA states:
>
> This paragraph is intended to exclude from OEM Licensed Products those Digital Cameras that Altek makes or sells on a "contract assembly" basis, as defined below.  For purposes of this Agreement, a Digital Camera is a "Contract Assembly Digital Camera" if and only if the Net Sales collected or received by Altek for said Digital Cameras is less than fifty-percent (50%) of the open market price, or if there is no open market price a commercially reasonable price, of Digital Cameras which are in respect of features and functions equal or substantially equivalent to said Digital Cameras.  Contract Assembly Digital Cameras shall in no way be licensed under this Agreement and Altek shall not pay royalty under this Agreement for the sale of said Contract Assembly Digital Camera(s) …

(Dkt. No. 64-1, PLA § 4.14.)

13.     Nowhere in the PLA is "Open Market Price" explicitly defined. *See generally id.*

> **KODAK'S RESPONSE**:  The interpretation of "open market price" in the PLA is an issue of law for the Court and is not a fact subject to dispute.  As set forth in Kodak's Motion for Partial Summary Judgment (Dkt. No. 62 at 9-10), the plain terms of the PLA make clear that " open market price" is  "***Altek's*** open market price." (*See* Dkt. No. 64-1, PLA § 1.13(b)(2).)  Indeed, Section 1.13 uses "open market price" as a proxy for the price that Altek receives from a sale to its commercial customers.  (*Id.* (establishing "Altek's open market price" as the basis for calculating net sales when Altek makes a non-arm's length sale); *id.* at § 4.14 (referring to "***the*** open market price" set forth in Section 1.13) (emphasis added).)

14.     On August 26, 2011, Kodak first conveyed its interpretation of "open market price" to Altek—that "open market price" was the price for which Altek sold its manufactured cameras to its customers. *Id.*, Ex. I.

**KODAK'S RESPONSE**:  The interpretation of "open market price" in the PLA is an issue of law for the Court and is not a fact subject to dispute.  Further, Altek's statement about when "Kodak first conveyed its interpretation" is not relevant to the interpretation of the PLA terms at issue in Altek's summary judgment motion.  This is extrinsic evidence that Altek itself admits the Court need not consider. (Dkt. No. 58, Altek Br. at 1 ("extrinsic evidence may not be admitted because 'open market price' is not ambiguous…").)  In any event, Kodak disputes this statement.  The plain terms of the July 1, 2004 PLA make clear that  "open market price" is the price that Altek receives on sales to its customers.  (*See* Dkt. No. 64-1, PLA § 1.13(b)(2) (referring to "open market price" as "Altek's open market price"); *id.* at § 4.14 (referring to "***the*** open market price" set forth in Section 1.13) (emphasis added).)

15.     According to Kodak, "open market price" is the "price that Altek receives through a non-discounted, arms length transaction." *Id.*, Ex. J at Interrog. Resp. No. 3.

**KODAK'S RESPONSE**:  The interpretation of "open market price" in the PLA is an issue of law for the Court and is not a fact subject to dispute.  As set forth in the PLA, Kodak interprets "open market price" to be the price that Altek typically charges its commercial customers.  (*See* Dkt. No. 62, Kodak Br. at 9-10; Dkt. No. 60-9, Kodak's Response to Altek Interrogatory No. 3)

16.     Included in the original draft of the PLA, was the final version of Section 1.13. *See id.*, Ex. K & Ex. E at 97:20-98:6; 99:5-17. This provision states:

(b)(1) In the case of an arms [sic] length sale or other disposal of an OEM Licensed Product . . . . ***Net Sales shall mean the total net revenue received by Altek and its Subsidiaries*** . . . .

and

(b)(2) In the case of a sale or disposal of an OEM Licensed Product which has not been sold in an arms [sic] length transaction, ***Net Sales shall mean Altek's open market price for such OEM Licensed Product*** in the country of sale on the date when such sale occurred. . . . .

*Id.*, Ex. C, §1.13 (emphasis added).

**KODAK'S RESPONSE**:  Undisputed.

17.     Altek and Kodak signed the PLA on July 1, 2004 and July 14, 2004, respectively.

*Id.* at 20; Hsia Decl., ¶ 8.

**KODAK'S RESPONSE**:  Undisputed.

Dated:  February 15, 2013
    New York, New York         */s/ Robert J. Gunther, Jr.*

Robert J. Gunther, Jr.
WILMER CUTLER PICKERING HALE & DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
robert.gunther@wilmerhale.com

Michael J. Summersgill (admitted *pro hac vice*)
Jordan L. Hirsch (admitted *pro hac vice*)
Jonathan W. Woodard (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
michael.summersgill@wilmerhale.com
jordan.hirsch@wilmerhale.com
jonathan.woodard@wilmerhale.com

*Attorneys for Eastman Kodak Company*