Michael F. Heafey
mheafey@orrick.com
Morvarid Metanat
mmetanat@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401

Lisa T. Simpson
lsimpson@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W. 52nd Street
New York, NY  10019-6142
Telephone:  (212) 506-5000
Facsimile:   (212) 506-5151

Attorneys for Defendant
Altek Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>                    Plaintiff,<br><br>                v.<br><br>ALTEK CORPORATION,<br><br>                    Defendant. | Civil Action No.  12-cv-0246-DLC<br><br>Hon. Denise L. Cote<br><br>**CONFIDENTIAL – LODGED UNDER SEAL** |

## DEFENDANT ALTEK CORPORATION'S LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern

District of New York, and in support of Defendant Altek Corporation's Opposition to Eastman

Kodak Company's Motion for Partial Summary Judgment and Cross Motion for Summary

Judgment, Defendant Altek Corporation ("Altek") hereby submits this statement of facts as to which there are no genuine issues to be tried.

## The Factual Background

1. Altek is one of many Taiwanese manufacturers of digital cameras. Declaration of Alex Hsia in Support of Altek's Opposition to Eastman Kodak's Motion for Partial Summary Judgment ("Hsia Decl.") ¶ 3.

2. Altek manufactures digital cameras for third parties, who provide Altek with hardware specifications, proprietary software, and firmware. *Id.*

3. Altek does not sell the same camera to more than one customer. *Id.*

4. Altek's customers sell the Altek-manufactured cameras to consumers either directly or through distribution channels. *Id.* ¶ 4.

5. Altek does not sell cameras directly to consumers. *Id.* ¶ 3.

6. Altek faces competition from other digital camera manufactures. *Id.*

7. Altek only has a small share of the digital camera manufacturing market. Declaration of Jon Tomlin in Support of Altek's Opposition to Eastman Kodak's Motion for Partial Summary Judgment ("Tomlin Decl.") ¶ 36.

8. Altek does not possess significant market power. *Id.*

9. The Eastman Kodak Company ("Kodak") has been an Altek customer since at least 2002. Hsia Decl. ¶ 5.

10. From the outset of the parties' relationship, Kodak provided Altek with the specifications, hardware, software, and firmware necessary for manufacturing Kodak's cameras. *Id.* ¶ 3.

## The Patent License Agreement

11.  In July 2004, Altek and Kodak executed a patent license agreement ("PLA").  Hsia Decl. Ex. 1.

12.    Kodak provided the original draft of the PLA.  Declaration of Morvarid Metanat in Support of Altek's Opposition to Eastman Kodak's Motion for Partial Summary Judgment ("Metanat Decl.") Ex. 1 at 86:5-17; 89:17-90:20.

13.    Kodak drafted the PLA and was the custodian of all provision in the final PLA *Id.*

14.    Pursuant to the PLA, Kodak granted Altek a license to make OEM Licensed Products."  Hsia Decl. Ex. 1 at §§ 1.14 and 3.1(a).

15.     "OEM Licensed Products" are digital cameras that Altek manufactures for third parties.  *Id*. Ex. 1 at § 1.14.

16.    Under the PLA, Altek is exempted from royalty payments on cameras where "the Net Sales collected or received by Altek for [digital cameras] is less than fifty-percent (50%) of the open market price . . . ."  *Id.* Ex. 1 at § 4.14.

17.    Kodak drafted Section 4.14 at Altek's request.  Hsia Decl. ¶ 7.

18.    Nowhere in the PLA is "open market price" explicitly defined.  *See generally id.*

19.    Kodak stated that Section 4.14 of the PLA was "self explanatory."  *Id.* Ex. 4.

20.    Kodak stated that with respect to Section 4.14,

> any product which Altek receives 50% or more in value to the market value of the product, is a royalty bearing licensed product and anything less than 50%, is a non-royalty bearing and unlicensed product.

*Id.* Ex. 3 at 2.

21.    Prior to the execution of the PLA, Kodak did not state to Altek that "open market price" was anything other than "retail price."  Hsia Decl. ¶ 9; Metanat Decl. Ex. 4 at Resp. No. 3.

22.    Prior to the execution of the PLA, Kodak never told Altek that "open market

price" was the "price that Altek receives through a non-discounted, arms-length transaction."

Hsia Decl. ¶ 9; Metanat Decl. Ex. 4 at Resp. No. 3.

23.     There is no evidence of any written or verbal communication where Kodak stated

to Altek that "open market price" is the "price that Altek receives through a non-discounted,

arms-length [sic] transaction."  Metanat Decl. Ex. 1 at 120:19-127:3; Ex. 5 at 75:13-76:23

24.     The PLA includes Section 1.13 defining "net sales":

> (b)(1)  In the case of an arms [sic] length sale or other disposal of
> an OEM Licensed Product . . . . ***Net Sales shall mean the total net
> revenue received by Altek and its Subsidiaries*** . . . .

and

> (b)(2)  In the case of a sale or disposal of an OEM Licensed
> Product which has not been sold in an arms [sic] length
> transaction, ***Net Sales shall mean Altek's open market price for
> such OEM Licensed Product*** in the country of sale on the date
> when such sale occurred. . . . .

Hsia Decl. Ex. 1 at §1.13 (emphasis added).

**<u>The Importance of "Retail Price"</u>**

25.      It is customary in the digital camera industry for manufacturers to set their prices

according to the "retail prices" of their manufactured cameras.  Hsia Decl. ¶ 18; Declaration of

Jason Lin in Support of Altek's Opposition to Eastman Kodak's Motion for Partial Summary

Judgment ("Lin Decl.") ¶ 3.

26.     Starting in 2004, Jason Lin, Altek's Vice President of the MCM Business Unit,

communicated with Kodak's Japanese office ("Kodak Japan") regarding the cameras it

manufactured for Kodak.  Lin Decl. ¶ 5.

27.     Mr. Lin communicated with Toyofuku san, Sugano san, Pete Ozug, and Steve

Parson at Kodak Japan, who acknowledged that Altek collected "retail price" data for the

cameras it manufactured, including cameras for Kodak.  *Id.* ¶¶ 5, 9.

28.     Kodak itself would provide "retail prices" to Altek.  *Id.* ¶ 9.

29.     Since 2009, Kodak has consistently provided this information to Altek.  *Id.* ¶ 9, Exs. 1-3.

30.     Camera retail price information is used by manufacturers to set their own margins, while taking into account customers' profit margins and competitors' pricing.  *Id.* ¶ 3.

31.     To date, Altek continues to collect camera retail price information for the digital cameras it manufactures.  *Id.* ¶ 12.

**<u>The Parties' Conduct with Regards to "Open Market Price"</u>**

32.     Kodak hired KPMG to audit Altek in 2010.  Declaration of Juliette Chan in Support of Altek's Opposition to Eastman Kodak's Motion for Partial Summary Judgment ("Chan Decl.") ¶ 3.

33.     For purposes of the audit, KPMG did not ask Altek for data on the prices Altek charged its customers.  *Id.*

34.     For the audit, Altek provided KPMG with "retail price" information for the cameras it manufactured.  *Id.* ¶¶ 4-5, Exs. 1, 2 &3; Metanat Decl. Exs. 7 & 8.

35.     At no time during the audit did KPMG or Kodak state that "retail price" data was not appropriate data.  Chan Decl. ¶ 3.

36.     During the audit, Kodak and Altek disagreed over whether an average retail price or individual retail prices was the correct determination of open market price.  *Id.* ¶¶ 4-5, Exs. 1, 2 &3; Metanat Decl., Exs. 7 & 8.

37.     Kodak recommended that KPMG contact third party data vendors, Gesellschaft für Konsumforschung ("GFK") and the NPD Group ("NPD") to purchase pricing data.  Metanat

Decl. Exs. 9, 10; Chan Decl. ¶ 5, Exs. 1 & 2.

38.     On April 21, 2011, Kodak's counsel wrote Altek and requested that Altek provide "[t]he price actually ***received by Altek*** for sales of equivalent cameras and the identity of the cameras Altek contends are equivalent."  Chan Decl. Ex. 4 (emphasis in original).

39.     On August 26, 2011, Kodak conveyed its interpretation of "open market price" to Altek—that "open market price" was the price for which Altek sold its manufactured cameras to its customers.  Hsia Decl. ¶ 22; Metanat Decl. Ex. 4 at Interrog. Resp. No. 3.

40.     Altek began paying royalties to Kodak in 2004.  Hsia Decl. Ex. 9.

41     To date, Altek has paid Kodak approximately $2.5 million in royalties.  *Id.* ¶ 28.

**Altek's Board Of Director Approval**

42.     Kodak drafted provisions addressing the board approval requirement and included them in the PLA.  Metanat Decl. Ex. 11.

43.     During the negotiation of the PLA, Altek conveyed to Kodak that it could not enter into a PLA without first obtaining board approval, pursuant to its bylaws and the governing Taiwanese Company Act.  *Id.*; Hsia Decl. Ex. 8.

44.     Kodak drafted the fifth recital in the PLA to state:

> WHEREAS, Kodak and Altek each represents that it is fully authorized to deal generally with and to make this Agreement respecting the subject matter hereof, subject only to the approval of Altek's Board of Directors . . . .

Metanat Decl. Ex. 11.

45.     The PLA was never submitted to the Board for approval.  Hsia Decl. ¶ 21.

46.     Kodak never inquired whether Altek's Board had approved the PLA.  *Id.* ¶ 24; Metanat Decl. Ex. 1 at 229:2-6; Metanat Decl. Ex. 5 at 29:12-30:4; 32:21-33:8.

47.     To date, Altek's Board of Directors has still not approved the PLA.  Hsia Decl. ¶ 21.

**Rule 30(b)(6) Depositions of Kodak**

48.     On November 15, 2012, Altek deposed Kodak under Rule 30(b)(6).  Metanat Decl. ¶ 2.

49.      Michael Pagano, Kodak's Rule 30(b)(6) designee did not speak to any Kodak employees in preparation for his Rule 30(b)(6) deposition.  *Id.* Ex. 1 at 19:12-14; 20:16-18; 21:21-23; 26:16-18; 26:19-21; 36:9-37:10; 37:23-38:2; 38:19-21; 38:22-39:6; 39:23-40:6; 64:23-25; 75:11-22.

50.     Kodak agreed to produce a witness for an additional Rule 30(b)(6) deposition of Kodak.  *Id.* ¶ 14.

51.     On January 22, 2013, Altek again deposed Kodak's second Rule 30(b)(6) witness, Willy Shih.  *Id.* ¶ 6.

52.     Mr. Shih testified that he had an hour long telephone conversation with each of Laura Quatela and William Troner to prepare for the deposition.  *Id.* Ex. 5 at 7:1-12.

53.     Mr. Shih testified that he did not review any documents prior to these conversations, nor did he review any documents with the witnesses during these conversations. *Id.* Ex. 5 at 7:13-9:2; 62:5-12.

54.     Mr. Shih did not ask either Ms. Quatela or Mr. Troner whether Kodak had before executing the PLA communicated to Altek its interpretation of "open market price." *Id*. Ex. 5 at 74:10-75:8; 95:16-96:23.

55.     Mr. Shih testified that he had "no need to" and found it "unnecessary." *Id*. Ex. 5 at 95:16-96:23; 74:10-75:8.

56.     Mr. Shih also failed to inquire into communications between the parties regarding Altek's Board approval of the PLA and stated that it was impossible for him to know all of the communications that occurred between Kodak and Altek during the negotiation of the PLA.  *Id.* Ex. 5 at 31:13-33:8; 33:23-34:11; 34:6-10; 54:17-22; 55:11-24; 119:7-120:9.


Dated: February 19, 2013                ORRICK, HERRINGTON & SUTCLIFFE LLP

                                        By:  _____
                                              Michael F. Heafey (admitted *pro hac vice*)
                                              Morvarid Metanat (admitted *pro hac vice*)
                                              1000 Marsh Road
                                              Menlo Park, CA  94025-1021
                                              (650) 614-7400
                                              mheafey@orrick.com
                                              mmetanat@orrick.com

                                              Lisa T. Simpson
                                              51 W. 52nd Street
                                              New York, NY  10019-6142
                                              (212) 506-5000
                                              lsimpson@orrick.com

                                        ATTORNEYS FOR DEFENDANT
                                        ALTEK CORPORATION