UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>      Plaintiff,<br><br>   v.<br><br>ALTEK CORPORATION,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 12-CV-246 (DLC) |

**EASTMAN KODAK COMPANY'S REPLY IN FURTHER SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO ALTEK
<u>CORPORATION'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Robert J. Gunther, Jr.
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
robert.gunther@wilmerhale.com

Michael J. Summersgill (*pro hac vice*)
Jordan L. Hirsch (*pro hac vice*)
Jonathan W. Woodard (*pro hac vice*)
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
michael.summersgill@wilmerhale.com
jordan.hirsch@wilmerhale.com
jonathan.woodard@wilmerhale.com

*Attorneys for Eastman Kodak Company*

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. The Term "Open Market Price" Means The Price That Altek Charges Its Commercial Customers ......................................................................................... 1

    B. Altek Cannot Avoid Summary Judgment By Referring To Extrinsic Evidence ................. 4

    C. Altek Cannot Avoid Summary Judgment On The Ground That It Purportedly Needs Additional Discovery. ....................................................................................... 7

III. CONCLUSION ............................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Ebewo v. Martinez,* 309 F. Supp. 2d 600 (S.D.N.Y. 2004) ........................................................6

*Garbinski v. Nationwide Mut. Ins. Co.,* 3:10CV1191 VLB, 2012 WL 3027853
 (D. Conn. July 24, 2012) ...........................................................................................6

*Nat'l Util. Serv., Inc. v. Tiffany & Co.*, 07-CIV-3345-RJS, 2009 WL 755292
 (S.D.N.Y. Mar. 20, 2009) ..........................................................................................2

*U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 696 F. Supp. 2d 428 (S.D.N.Y. 2010) .............4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37(c) .......................................................................................................6

Fed R. Civ. P. 56(d) ........................................................................................................7

Eastman Kodak Company ("Kodak") respectfully submits this Reply in further support of its motion for partial summary judgment (Dkt. 50), and in opposition to Altek's cross-motion for summary judgment (Dkt. 68).

## I. INTRODUCTION

Altek makes multiple arguments in opposition to Kodak's motion for summary judgment. But these arguments are *directly contrary* to the positions it advanced in support of its own summary judgment motion. Altek now argues that the term "open market price" is ambiguous (Dkt. 82, Altek Opp. Br. at 12); that the Court should consider extrinsic evidence, including hundreds of pages documents produced after the summary judgment deadline, self-serving declarations, and even an untimely expert report (*id.* at 15-20); and that fact disputes preclude summary judgment for Kodak (*id.* at 15). But Altek argued precisely the opposite in its own summary judgment motion: that the term "open market price" is unambiguous (Dkt 58, Altek Br. at 1); that extrinsic evidence should not be admitted (*id.*); and that this dispute should be decided at summary judgment based on the plain language of the PLA (*id.* at 4-5). Altek's arguments prove only that it will say anything in an effort to avoid summary judgment. As set forth below, each of Altek's arguments is wrong as a matter of law. According to the plain terms of PLA, "open market price" is the price Altek charges its commercial customers. Kodak respectfully requests that the Court grant its motion for summary judgment and deny Altek's cross-motion.[1]

## II. ARGUMENT

### A. The Term "Open Market Price" Means The Price That Altek Charges Its Commercial Customers

Altek makes five arguments in support of its contention that "open market price" cannot mean the price Altek charges its commercial customers. Each of these arguments fails.

---

[1] Altek's cross-motion for summary judgment fails for the additional reason that it could have been, but was not, filed before the Court's February 1, 2013 summary judgment deadline. (Dkt. 49.)

*First*, Altek is incorrect that Kodak's interpretation of the term "open market price" relies on extrinsic evidence. In particular, Altek argues that Kodak's interpretation depends on the deposition testimony of Altek's corporate representative that Altek has never sold digital cameras to retail customers. (Dkt. 82, Altek Opp. Br. at 9.)[2] But as Kodak's opening brief makes clear, Kodak's interpretation is based not on extrinsic evidence but instead on the plain terms of the PLA, including Sections 1.13, 4.4, 4.8, 4.10 and 4.14, which establish that the "open market price" is "*Altek's* price." (*See* Dkt. 62, Kodak Br. at 9-10.) With the meaning of "open market price" thus established by the unambiguous provisions of the PLA, the Court can then look to the undisputed facts to determine what constitutes "Altek's price." *See Nat'l Util. Serv., Inc. v. Tiffany & Co.*, 07-CIV-3345-RJS, 2009 WL 755292 at *6-8 (S.D.N.Y. Mar. 20, 2009) (after interpreting meaning of contract terms as a matter of law, looking to undisputed facts to determine whether plaintiff made a "recommendation" that would entitle it to a share of "costs" under the plain meaning of contract). As Altek conceded in even its opposition brief, Altek has never sold digital cameras to retail customers but instead sells its products exclusively to OEM customers. (Dkt. 82, Altek Opp. Br. at 2 ("Altek…never sells cameras directly to consumers.")); (Dkt. 83, Altek 56.1 Statement ¶ 5.) *Altek's* price must therefore be the price Altek charges its OEM customers.

*Second*, Altek is incorrect that Kodak's interpretation creates contradictions within the PLA. (Dkt. 82, Altek Opp. Br. at 9-10.) Kodak's interpretation that "open market price" is "Altek's price" is instead the *only* interpretation that is consistent with all of the terms of the

---

[2] Altek also asserts that Kodak's interpretation relies on a royalty report from the second quarter of 2011 in which Altek claimed that it was not required to pay royalties on any of its digital camera sales. (*See* Dkt. 82, Altek Opp. Br. at 9.) But Kodak merely uses the royalty report to illustrate why Altek's interpretation is unreasonable. (Dkt. 62, Kodak Br. at 12.) Altek agreed to pay royalties on all of its covered digital camera sales, subject to a few exceptions. (Dkt. 64-1, PLA § 4.10 ("…Altek shall pay a royalty on all Digital Cameras sold or transferred by Altek…").) If Altek's interpretation were correct, according to Altek, it would be almost entirely excused from paying royalties, which would eviscerate the purpose of the PLA.

PLA.  (*See* Dkt. 62, Kodak Br. at 9-12.)  Every time the term "open market price" is used in the PLA, it is explicitly tied to Altek's prices, or Altek's sales.  (Dkt. 64-1, PLA § 1.13(b)(2) (defining Altek's "Net Sales" according to "***Altek's*** open market price"); § 4.8 (stating that Altek must report to Kodak all Digital Cameras "sold or disposed of ***by Altek***" at the open market price); and § 4.14 (referring to "***the*** open market price") (emphasis added).)  Section 4.4 further states that the only sales that are relevant for purposes of the PLA are Altek's sales.  (*Id.* at § 4.4 ("For the purpose of this Agreement, Altek Branded Licensed Product and OEM Licensed Products shall be considered sold when invoiced ***by Altek.***") (emphasis added).)  Altek cannot reconcile its "retail price" argument with these provisions of the PLA.

***Third***, Altek is incorrect that Section 4.14 could never apply under Kodak's interpretation. (Dkt. 82, Altek Opp. Br. at 9-10.)  As Kodak explained in its opposition to Altek's summary judgment motion ("Kodak's Opposition Brief") (Dkt. 65 at 6-7), Altek's claim that Section 4.14 could never apply under Kodak's interpretation is based on the fundamentally flawed assumption that if Altek's open market price is an arm's length price, then the converse must always be true: that all arm's length sales must always be at the open market price.  (*Id.*)  This is equivalent to arguing that because an apple is a fruit, all fruits are apples.  Altek's contract assembly sales are the example that confirms the flaw in Altek's logic: they are arm's length, even though the sale is for less than the open market price.  (*See id.*)

***Fourth***, Altek is incorrect that the plain meaning of open market price is "retail price." (Dkt. 82, Altek Opp. Br. at 10-11.)  As set forth in Kodak's Opposition Brief, Altek's supposed "plain meaning" argument is based entirely on a dictionary definition of the word "retail"—not of "open market price."  (*See* Dkt. 65 at 3.)  Altek does not, and cannot, point to a single provision in the PLA that states that "open market price" is a retail price.  Altek similarly cannot

- 3 -

reconcile its "retail price" argument with the PLA's reference to "*Altek's* open market price," which presumes that Altek's sales to its OEM customers are open market sales. (*See* Dkt. 64-1, PLA § 1.13(b)(2).)

*Finally*, Section 4.8 of the PLA does not support Altek's "retail price" interpretation. Altek argues that Section 4.8 uses the term "open market price" to refer to sales other than Altek's sales. (Dkt. 82, Altek Opp. Br. at 11.)  But the plain terms of Section 4.8 explicitly refer to the price of cameras "sold or disposed of *by Altek.*"  (Dkt. 64-1, PLA § 4.8 (Altek must report its Net Sales of Digital Cameras "sold or disposed of *by Altek*" at the open market price.).)

### B.  Altek Cannot Avoid Summary Judgment By Referring To Extrinsic Evidence

Altek next argues that extrinsic evidence precludes summary judgment for Kodak and warrants summary judgment for Altek.  This is again wrong for multiple reasons.

*First*, Altek argued in its own summary judgment motion that the PLA is unambiguous and that the Court should *not* consider extrinsic evidence.  (Dkt. 58, Altek Br. at 1.)  Altek should be taken at its word—its last-minute attempt to reverse course should be rejected.  Nor does the PLA somehow become ambiguous, as Altek claims, simply because Kodak and Altek have offered competing interpretations of the term "open market price." (Dkt. 82, Altek Opp. Br. at 12); *U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 440 (S.D.N.Y. 2010) ("Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation.") (internal citation omitted).  Indeed, if that were true, summary judgment would never be appropriate on the issue of contract interpretation.

*Second*, many of the documents that Altek cites in its opposition were not properly produced in discovery.  Specifically, Exhibits 5 and 6 to Alex Hsia's declaration (Dkt. 78), and all of the exhibits to Jason Lin's declaration (Dkt. 79), were disclosed to Kodak for the first time

on February 11, 2013—more than ***three months*** after the discovery deadline, ***ten days*** after Kodak filed its summary judgment motion, and just ***four days*** before Altek filed its opposition. (Ex. 1, February 11, 2013 Letter from Altek; *see also* Dkt Nos. 36, 49 (setting schedules for discovery and summary judgment).)  Altek attempts to explain away its belated production by asserting that an Altek employee found these documents only recently while purportedly "cleaning out a computer." (Ex. 1, February 11, 2013 Letter from Altek.)  It offers no explanation for why this computer was not searched earlier. (*Id.*)[3]

  Having failed to properly produce these and other documents during discovery—or even before the summary judgment deadline—Altek should not be permitted to rely on them now. Fed. R. Civ. P. 37(c); *Ebewo v. Martinez,* 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) ("The purpose of [Rule 37] is to prevent the practice of 'sandbagging' an opposing party with new evidence"); *Garbinski v. Nationwide Mut. Ins. Co.,* 10-CV-1191 VLB, 2012 WL 3027853 at *5 (D. Conn. July 24, 2012) (striking documents disclosed for the first time more than three months after the discovery deadline as part of a summary judgment opposition).

  ***Third***, and in any event, the extrinsic evidence on which Altek now seeks to rely does not support its proposed interpretation of the PLA.  Altek relies on four categories of extrinsic evidence—none of it supports Altek's argument that "open market price" means "retail price":

  <u>OEM Pricing Documents</u>:  Altek argues that, because its documents allegedly show that Altek considers third-party retail price information when setting the OEM prices it charges its own customers, "open market price" must mean "retail price." (Dkt. 82, Altek Opp. Br. at 15.) But the unremarkable fact that Altek considers retail prices in setting its OEM prices establishes nothing.  Because Altek's customers sell at a retail price, and its customers will only buy from

---

[3] On February 16, 2013, Altek produced still more documents for the first time.  The declaration of Altek's purported expert, Jonathan Tomlin, and the exhibits to the declaration of Steve Shih were provided to Kodak for the first time with Altek's Opposition Brief.  (Tomlin Declaration; Dkt. 80, Shih Declaration ¶ 3.)  Altek has offered no explanation as to why these documents were not produced during discovery.

Altek at a price that is sufficiently below their retail prices to allow them to make a profit, Altek must consider retail prices in setting its own prices.  Indeed, the fact that Altek considers retail prices in setting its OEM prices merely highlights that they are not the same thing.

Negotiation History:  Altek argues that the negotiation history of the PLA suggests that "open market price" means "retail price." (Dkt. 82, Altek Opp. Br. at 17.)  As an initial matter, none of the documents on which Altek relies even uses the words retail, retail market, or retail prices.  (*See id.*, (citing Hsia Decl. Exs. 2, 3.)  And Altek's corporate designee conceded that there is not a single document from any point in the PLA negotiations in which Kodak or Altek ever mentioned the phrase "retail price." (Dkt. 64-2, Lin Dep. at 80:22-81:3.)[4]

In any event, Altek's claim that it made "several attempts to confirm" the meaning of "open market price" during the PLA negotiations (Dkt. 82, Altek Opp. Br. at 17) is flatly contradicted by the testimony of its own corporate representative.  According to Mr. Lin, "there was ***no discussion***" of "open market price." (Dkt. 64-2, Lin Dep. at 81:5-12 ("Q.  You can't point to a single document in which Kodak agreed that 'open market price' meant retail price, correct? [Objection]  A. As I said, the wording is so clear, so there was ***no discussion***. Because there was no discussion, so there was no record of that.") (emphasis added).)  Altek cannot create a factual dispute by contradicting its own prior sworn testimony.  *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (rejecting factual allegations that contradict a party's own prior testimony).

Audit Materials: Altek's assertion that Kodak or its auditor, KPMG, previously agreed

---

[4] In the absence of any negotiation documents referring to "retail price," Altek relies instead on a document that refers to the "market value" of Altek's digital cameras in the context of Section 4.14; Altek asserts that "retail price" should be "inferred" from this. (Dkt. 82, Altek Opp. Br. at 17.)  Altek's inference is not warranted –Altek of course receives "value" when it makes sales to its commercial customers. (Ex. 2, Lin Dep. at 94:3-7 ("Q [W]hen Altek sells its cameras to Altek's customers, Altek receives value for that--those cameras, correct?  A.  Value means money. Yes, we receive money for that.").)

with Altek's "retail price" interpretation is similarly unsupported. (Dkt. 82, Altek Opp. Br at 18.) That KPMG allegedly requested retail data from two market research companies does not prove that KPMG—let alone Kodak—believed "open market price" means "retail price." In fact, as noted in Kodak's opening brief, KPMG explicitly told Altek that its retail price interpretation was incorrect. (*See* Dkt. 62, Kodak Br. at 13-14; Dkt. 51-9, August 9, 2010 Email (Altek may not rely on retail prices (*i.e.* MSRP) to support its exclusions under Section 4.14).)

"Market Power" Materials: Finally, Altek argues based on newly-produced documents and a supposed expert report that it allegedly does not have "market power" to "force" its customers to pay substantially different prices for similar cameras and that, as a result, Section 4.14 would never apply under Kodak's interpretation. (Dkt. 82, Altek Opp. Br. at 19-20.) But this argument ignores the stated purpose of the contract assembly provision in Section 4.14. Section 4.14 does not require Altek to have "market power" to force different prices on its different customers. Instead, as the plain language of the PLA establishes, Section 4.14 applies where Altek provides a different type of service: contract assembly.

### C. Altek Cannot Avoid Summary Judgment On The Ground That It Purportedly Needs Additional Discovery.

Altek also submits a declaration asserting that Kodak's motion should be denied pursuant to Fed R. Civ. P. 56(d). (Dkt. 84, Rule 56(d) Decl.) Altek argues that it has been denied discovery regarding statements that Kodak and Altek made during the negotiation of the PLA, and whether Altek notified Kodak that its Board of Directors failed to approve the PLA. (*Id.* at ¶ 11.) Altek's arguments should be rejected.

*First*, Altek's argument that it needs additional discovery is entirely inconsistent with its earlier position that this dispute is ripe for resolution on summary judgment. (Dkt. 58, Altek Br. at 4-5.) Altek cannot have it both ways.

*Second*, contrary to Altek's arguments (Dkt. 84, Rule 56(d) Decl. ¶¶ 6-8, 10-11), Kodak's corporate representatives were fully prepared to testify regarding the PLA negotiations and communications regarding the alleged failure of Altek's Board of Directors to approve the PLA.  Kodak's first Rule 30(b)(6) witness, Michael Pagano, is Kodak's former Vice President of IP Licensing and Transactions.  (*See* Ex. 3, Pagano Dep. at 6:9-9:25.)  In that role, Mr. Pagano has personal knowledge of the PLA and Kodak's relationship with Altek.  (*See id*. at 7:17-8:14.)  In preparation for his deposition, Mr. Pagano testified that he called upon his own experience and reviewed "all the relevant documents." (*Id.*)  Mr. Pagano testified Kodak believed that Altek had all necessary approvals by signing the PLA on July 1, 2004, one day *after* the date by which Altek agreed to secure its Board's approval.  (*See id.* at 228:9-231:8.)  Mr. Pagano also testified to his understanding that the meaning of "open market price" as "Altek's price" was clear throughout the PLA negotiations, and never questioned by Altek.  (*See e.g., id.* at 145:21-151:3.)

Although Kodak disagreed with Altek's complaints regarding Mr. Pagano's testimony, Kodak offered Willy Shih as a second Rule 30(b)(6) witness in an effort to move the litigation forward.  Dr. Shih was the head of Kodak's licensing program at the time the PLA was negotiated (Ex. 4, Shih Dep. at 20:4-21:2), was directly involved in negotiation meetings with Altek (*see e.g., id.* at 15:14-17:21), was the direct supervisor of other Kodak employees and representatives involved in the negotiations (*see e.g., id.* at 21:4-23), and ultimately signed the PLA for Kodak (Dkt. 64-1, PLA at 20).  In addition to drawing on his direct involvement in the PLA negotiations, Dr. Shih prepared for his deposition by reviewing "an extensive number of documents" (Ex. 4, Shih Dep. at 13:5-12), and having hour-long conversations with both Laura Quatela (the current President of Kodak and, in 2004, a senior attorney and Director of IP Licensing) and William Troner (one of Kodak's representatives involved in the negotiations)

about their recollections of the PLA negotiations (*id.* at 6:13-7:8; 96:24-98:6; 118:8-119:6).[5]  Dr. Shih testified that no one at Altek ever told Kodak that the PLA was not approved.  (*Id.* at 54:17-55:10.)  Dr. Shih also testified that the meaning of the term "open market price" was clear to Altek during the negotiations.  (*See e.g.*, *id.* at 72:22-76:23.)  Altek's claim that Dr. Shih and Mr. Pagano were "unprepared" to testify regarding the PLA negotiations is not credible.

*Third*, the information Altek now claims it does not have regarding communications about the approval of its Board of Directors (*see* Dkt. 84, Rule 56(d) Decl. ¶ 11(c)), is squarely within its own possession.  Indeed, Altek's own corporate representative **has already testified** that notice of the Board's alleged failure to approve the PLA was never provided to Kodak.  (Dkt. 64-2, Lin Dep. at 125:8-14 ("Q. [N]o one from Altek ever told Kodak that its board had never approved the final version of the patent license agreement, right? [Objection] A. Yes, because no one in Kodak ever asked that question to Altek.").)  This fact was confirmed by Kodak's witnesses. (*See* Ex. 3, Pagano Dep. at 228:9-231:8; Ex. 4, Shih Dep., at 54:17-55:10.)

*Fourth*, Altek incorrectly argues that it has been denied discovery with respect to the parties' communications regarding the interpretation of the term "open market price." (*See* Dkt. 84, 56(d) Decl. at ¶ 11.)  As an initial matter, Altek fails to identify any particular information that has allegedly been withheld.  In any event, Altek's own corporate representative has already testified that "there was no discussion" of the term "open market price" during the PLA negotiations.  (Dkt. 64-2, Lin Dep. at 81:5-12.)  Kodak's witnesses have also repeatedly testified that the meaning of "open market price"—*i.e.* "Altek's price"—would have been clear to Altek in the PLA as drafted, and was clear throughout the PLA negotiations.  (*See* Ex. 3*,* Pagano Dep.

---

[5]     Altek argues that Kodak has blocked Altek's efforts to depose Mr. Troner and Ms. Quatela. (Dkt. 84, Rule 56(d) Decl. ¶ 9.)  That is incorrect.  The parties *jointly* proposed a discovery order on June 22, 2012 that limited depositions to one Rule 30(b)(6) deposition for each party.  (Dkt. 35 at 5.)  The Court entered the parties' proposed order with no modification to the deposition limits on June 25, 2012 (Dkt. 36 at 5), and subsequently re-confirmed for Altek that the parties are limited to a single Rule 30(b)(6) deposition on September 28, 2012 (Dkt. 45).

at 145:21-151:3; Ex. 4, Shih Dep. at 72:22-76:23.)

*Finally*, Altek's claim that its former employees are "uncooperative" and thus that it needs more discovery from Kodak (Dkt. 84, 56(d) Decl. ¶¶ 5, 9), is also directly contrary to Altek's representations regarding Altek's access to and relationships with the employees in question. In January 2013, Altek represented to Kodak that it had been in contact with its former employee, Michael Chen, and that Mr. Chen had provided Altek with "information on the parties' communications regarding the negotiation and interpretation" of the PLA. (Ex. 5, Jan. 15, 2013 Letter.) This is *precisely the type of information* Altek now claims that Mr. Chen refuses to provide. (*See* Dkt. 84, Rule 56(d) Decl. ¶ 9 (arguing that Altek has "limited access to Mr. Chen.").) When Kodak requested to depose Mr. Chen, Altek refused. (*See* Ex. 6, Jan. 17-18, 2013 Emails.) Altek further asserted that it represents Mr. Chen, thereby preventing Kodak from contacting him directly. (Ex. 7, Jan. 8 Letter ("Mr. Chen has also agreed to Orrick's representation of him").) Altek cannot simultaneously use its representation of Mr. Chen to bar access to the witness and then be heard to complain that Mr. Chen is not cooperative.[6]

## III.   CONCLUSION

Altek cannot avoid the plain language of the PLA, which establishes that "open market price" is "Altek's price." It is further undisputed that Altek's price is the price Altek charges its commercial customers. Accordingly, for all of the foregoing reasons, and the reasons set forth in Kodak's summary judgment briefing, Kodak respectfully requests that the Court grant summary judgment for Kodak and deny Altek's motion (and cross-motion) for summary judgment.

---

[6] This is the second time that Altek's counsel have asserted that they represent Mr. Chen and prevented Kodak from contacting him directly. In September 2012, Altek's counsel claimed that they represent Mr. Chen and another former Altek employee, PJ Chang. (Ex. 8, Sept. 28 Email.) It was subsequently revealed that Altek had not contacted either of them, and that Altek's counsel did not, in fact, represent them. (*See* Dkt. 47 at 9-12.)

Dated: February 22, 2013
       New York, New York

*/s/ Robert J. Gunther, Jr.*

Robert J. Gunther, Jr.
WILMER CUTLER PICKERING HALE & DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
robert.gunther@wilmerhale.com

Michael J. Summersgill (admitted *pro hac vice*)
Jordan L. Hirsch (admitted *pro hac vice*)
Jonathan W. Woodard (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
michael.summersgill@wilmerhale.com
jordan.hirsch@wilmerhale.com
jonathan.woodard@wilmerhale.com

*Attorneys for Eastman Kodak Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>                Plaintiff,<br><br>    v.<br><br>ALTEK CORPORATION.<br><br>                Defendant. | Civil Action No. 12-CV-246 (DLC) |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of February, 2013, I caused Plaintiff Eastman Kodak Company's Eastman Kodak Company's Reply In Further Support Of Its Motion For Partial Summary Judgment And In Opposition To Altek Corporation's Cross-Motion For Partial Summary Judgment, and all supporting papers, including the Declaration of Jonathan Woodard, and Exhibits thereto to be served on all attorneys of record through the Court's ECF system.

                By: */s/ Robert J. Gunther, Jr.*