Michael F. Heafey
mheafey@orrick.com
Morvarid Metanat
mmetanat@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401

Lisa Simpson
lsimpson@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W. 52nd Street
New York, NY  10019-6142
Telephone:  (212) 506-5000
Facsimile:   (212) 506-5151

Attorneys for Defendant
Altek Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>        Plaintiff,<br><br>        v.<br><br>ALTEK CORPORATION,<br><br>        Defendant. | Civil Action No.  12-cv-0246-DLC<br><br>Hon. Denise L. Cote |

**DEFENDANT ALTEK CORPORATION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

I.   **ARGUMENT**

Plaintiff Eastman Kodak Company's Opposition to Altek's Motion for Partial Summary Judgment does little to remedy the deficiencies of its interpretation of "open market price." Summary judgment is appropriate here because only Altek's interpretation is consistent with the plain and ordinary meaning of "open market price" within the four corners of the PLA and gives effect to all of its provisions. Unlike Altek's interpretation, Kodak's interpretation is legally incorrect and unreasonable. Kodak's opposition papers failed to:

1)   rectify the contradictions between provisions of the PLA created by Kodak's interpretation; and

2)   show that Kodak's interpretation gives full effect to Section 4.14 of the PLA.

Contrary to Kodak's argument, it is only Altek's interpretation that is reasonable and consistent with the purpose and intent of the PLA. As such, summary judgment should be granted.

To the extent that the Court finds Kodak's interpretation of "open market price" reasonable, however, summary judgment is not appropriate. A finding of two reasonable interpretations requires the aid of extrinsic evidence and so opens questions of material fact. *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1988) (citation omitted); *Alexander & Alexander v. These Certain Underwriters at Lloyd's London*, 136 F.3d 82, 86 (2d Cir. 1998).

A.   **Kodak's New Argument In Opposition Fails To Remedy That Its Interpretation Renders Section 4.14 Ineffective**

Kodak's opposition fails to show that its interpretation of "open market price" is reasonable as Kodak has not rebutted that its interpretation creates contradictions within the PLA and renders Section 4.14 of the PLA ineffective. Memorandum of Law in Support of Altek Corporation's Motion for Partial Summary Judgment ("Altek Motion") at 9-11.

Kodak asserts that Altek's "criticism" of Kodak's proposed interpretation is "fundamentally flawed" because according to Kodak, Section 4.14 *does* exempt Altek's cameras from royalties in one circumstance and it is possible to have an arm's-length sale that is below the "open market price." Kodak's Opposition to Altek Corporation's Motion for Partial Summary Judgment ("Kodak Opposition") at 6.  Both of these assertions are incorrect and are premised on faulty analysis.  Kodak's sole example of a circumstance under which its interpretation gives effect to Section 4.14 is preempted and contradicted by Section 1.13(b)(1) of the PLA.  Moreover, under Section 1.13(b)(1) and Kodak's interpretation, it is impossible to have an arm's-length sale that is below the "open market price."  Kodak has failed to rebut Altek's assertion that Kodak's interpretation creates inconsistencies within the provisions of the PLA and renders Section 4.14 ineffective, and is thus, unreasonable.

### 1. Kodak's Interpretation Creates Contradictions And Renders Section 4.14 Ineffective

Kodak has failed to rebut Altek's argument that Kodak's interpretation renders Section 4.14 ineffective.  Altek Motion at 9-11.  Instead, Kodak conclusorily states that its interpretation gives effect to Section 4.14 and offers a single example. Kodak Opp. at 6-7.

### 2. Kodak's Only Example Of Its Interpretation Giving Effect To Section 4.14 Is Flawed

Kodak's only rebuttal to Altek's argument is a single example where Kodak contends that Section 4.14 would exempt Altek's cameras from royalties under Kodak's interpretation. Specifically, Kodak argues that where Altek only assembles parts consigned by its customers and therefore charges less than its "typical price," "[t]his would still be an arm's length sale." *See* Kodak Opp. at 7.  Kodak's example is fatally flawed because the PLA anticipates this issue and renders it consistent with Altek's interpretation—not Kodak's.  Had Kodak taken a closer look

-2-

at the PLA, it would have found that Section 1.13(b)(1) addresses this situation in a manner consistent with Altek's interpretation.  In addition, a sale below fifty percent of the "open market price" cannot be considered an "arms-length" transaction by Kodak's own admission.

> a. **A Sale Below Fifty Percent Of The "Open Market Price" Cannot Be An Arms Length Transaction Pursuant To Section 1.13(b)(1)**

Section 1.13(b)(1) of the PLA provides:

> Components purchased or acquired by Altek or a Subsidiary from an OEM customer for use in manufacturing an OEM Licensed Product for said customer *shall be valued for the purpose of royalty determination, at a price equivalent to an arms length transaction* purchased from such OEM customer.

Declaration of Morvarid Metanat in Support of Altek's Motion for Partial Summary Judgment ("Metanat Decl."), Ex. C, § 1.13(b)(1).  This provision anticipates and addresses Kodak's *exact* example provided in rebuttal of Altek's argument.  Under Section 1.13(b)(1), where Altek's price is lowered because a customer has consigned parts, or in other words where "components [are] purchased or acquired by Altek . . . from an OEM customer for use in manufacturing for said customer," Section 1.13(b)(1) states that the "net sales" are increased by "*a price equivalent to an arms length transaction*" for the parts.  *Id*, § 1.13(b)(1).  Therefore, Kodak's example is *wrong*; the PLA does not even allow for such a situation to occur.

Moreover, up until Section 1.13(b)(1) is applied, the transaction is "non arms-length," because the "net sales" are *increased* to the "arms length" transaction price.  *See* Altek Motion at 9-11.  This is consistent with Altek's interpretation of "open market price" as a "retail price." *Id*.  Kodak has failed to review and consider the PLA in its entirety and has failed to analyze its interpretation within the four corners of the PLA.  *S. Road Assocs., LLC v. Int'l Bus. Machines Corp.*, 826 N.E.2d 806, 793 N.Y.S.2d 259, 260 (N.Y. 2005).

### b. A Sale Below Fifty Percent Of The "Open Market Price" Cannot Be An "Arms-Length" Transaction Under Kodak's Own Definition

Kodak's own interpretation of "open market price" as the "price that Altek receives through a non-discounted, *arms-length transaction*," destroys Kodak's argument.  Because Kodak asserts that "open market price" is an "arms-length transaction" price, it is impossible for any price below an "open market price" to be "arms-length" by definition.  Metanat Decl., Ex. J. Under Kodak's interpretation, Section 4.14 could *never* apply to exempt Altek's cameras from royalties (*see* Altek Motion at 9-11) because Altek could never engage in an "arms-length" transaction where Altek's received "net sales" are less than fifty percent of the "open market price."

### B. Kodak's Opposition Fails To Refute Altek's Interpretation

Altek's interpretation is the only interpretation that is consistent with and gives effect to all provisions of the PLA.  Altek Motion at 6-9.  Kodak's argument that Altek's interpretation of "open market price" is "contrary to the plain language of the PLA" is unpersuasive and does not defeat summary judgment.

#### 1. Contrary To Kodak's Opposition, Altek's Interpretation Is Consistent With The Plain And Ordinary Meaning Of "Open Market Price"

Kodak's assertion that Altek's interpretation is contrary to the plain and ordinary meaning of the term is incorrect.  A "retail price" definition of "open market price" is consistent with the plain and ordinary meaning of the term.  A "retail price" is a price that is offered to the general public, whereas an open market is a market that is open to *all*.  It is undisputed that "open market price" has the *same* meaning—a "retail price"—throughout the PLA, including Sections 1.13, 4.8, 4.10, and 4.14.  *See* Kodak Opp. at 4.

Kodak asserts that the PLA "never refers to 'retail price,'" and as such, it cannot be the

correct interpretation of "open market price." *Id*. at 1, 3.  First, if the PLA had included a definition of "open market price," there would be no need to interpret the term.  Second, this argument works against Kodak—nowhere in the PLA is "open market price" defined as Kodak's interpretation—the "price Altek receives in a non discounted, arms length transaction."  *See generally* Metanat Decl., Ex. C.  The PLA itself anticipates the sale of cameras on the "retail" market.  *See id.,* § 1.13(b)(2) ("Net Sales shall mean Altek's open market price . . . .in the *country of sale* . . ."); § 4.8.

Moreover, "open market price" cannot refer to the price at which Altek sells its cameras to its customers because such a market does not exist.  Indeed, Altek never sells the same camera to more than one customer—as such, there is no relevant market for Altek's camera sales.[1]  Declaration of Alex Hsia in Support of Altek's Opposition ("Hsia Decl."), ¶ 3.  On the other hand, all of the cameras that Altek manufacturers are sold on the retail market—an "open market."  *See* Altek Motion at 6-7.

### 2. Altek's Interpretation Gives Effect To All Provisions Of The PLA

Contrary to Kodak's assertion, Altek's interpretation is consistent with and gives effect to all provisions.  Kodak Opp. at 2-6; *see Sunrise Mall Assocs. v. Import Alley of Sunrise Mall, Inc.*, 211 A.D.2d 711, 621 N.Y.S.2d 662 (N.Y. App. Div. 2d Dept. 1995).  Altek's interpretation does just that; it is consistent with and gives effect to all provisions of the PLA. Altek interprets "open market price" to have the same meaning throughout the PLA, including Sections 1.13, 4.8, 4.10, and 4.14.  "Open market price" means a "retail price."  "Altek's open market price" means

---

[1] Altek contends that extrinsic evidence should not be admitted to interpret "open market price" unless the Court first finds that Kodak's interpretation is also reasonable. Altek submits this evidence so that it is not found to have failed to adequately respond to Kodak's extrinsic evidence.

the "retail price" of the cameras Altek manufactures.

Kodak first argues that under Altek's interpretation, Section 1.13 "would make little sense" because Altek's net sales are used to calculate royalties for its "arms-length" sales under Section 1.13(b)(1), and therefore, for "non arms length" transactions, Altek's royalties should be calculated using the "price Altek receives in a non discounted, arms-length transaction." Kodak Opp. at 4-5. Not so. Rather, under Altek's interpretation, where Altek engages in a ***non-arms length*** transaction, "net sales" are equated to the "retail price," resulting in the highest possible royalty base— thereby bypassing any possible manipulation of royalties by non-arm's length transactions. *See* Metanat Decl., Ex. C, § 1.13. Therefore, an objective, third-party "retail price" is more appropriate when calculating royalties. Otherwise, Altek could manipulate all of its prices so that the net sales received by Altek would always be less than fifty percent of the "open market price," ensuring exemption under Section 4.14.

In addition, under Section 4.8, Altek "shall" record its "net sales" for cameras at an "open market price ***in the country of sale.***" *Id.*, § 4.8. As a first matter, unlike Kodak's interpretation, Altek's interpretation maintains a distinction between "open market price" and "net sales" as Sections 1.13(a)(2), 1.13(b)(2), and 4.14 require. Also, "in the country of sale" is meaningful only if "open market price" is a retail price because as Altek is located in Taiwan, Altek only sells cameras in Taiwan. *Id.*, at 1. If applied to Altek's sales, this phrase is ineffective and meaningless. *James v. Jamie Towers Housing Co.,* 294 A.D.2d 268, 269, 743 N.Y.S.2d 85, 87 (N.Y. App. Div. 1st Dept. 2002).

As for Kodak's assertion that Altek has never "paid royalties using the retail price of its

digital cameras," Altek does not dispute this contention.[2] *See* Kodak Opp. at 5.  Pursuant to Section 4.1(a), Altek pays and has paid royalties based on the "net sales" it receives for its manufactured cameras.  Metanat Decl., Ex. C, § 4.1(a).  The determination of Altek's "net sales," as the royalty base, however, is a separate issue and has no bearing on whether Section 4.14 exempts royalties.

### 3. Altek's Interpretation Is Consistent With The Purpose And Intent Of The PLA

Kodak argues that Altek's interpretation of "open market price" is contrary to the "purpose and intent of the PLA."  Kodak Opp. at 5-6.  Just as with Kodak's other arguments, this argument misses the mark. Altek's interpretation is consistent with and gives effect to all provisions within the four corners of the PLA, as intended by the parties.

#### a. Altek's Interpretation Is Consistent With The Purpose Of Sections 4.10, 4.12, & 4.14 Of The PLA

The PLA begins with the premise that Altek pay royalties on all cameras.  Metanat Decl., Ex. C, § 4.10.  The PLA, however, provides exemptions from royalties on cameras. *Id*., §§ 4.12 & 4.14.  Nowhere in the PLA are there any floors or ceilings placed on these exemptions. *See generally id*. Altek's interpretation is consistent with and gives effect to all provision of the PLA.

To the extent that Kodak attempts to introduce Altek's 2011 Royalty Statement as evidence of the parties' intent, this evidence is inadmissible—extrinsic evidence cannot be used to ***create*** an ambiguity in a contract. *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642, 565 N.Y.S.2d 440, 443 (N.Y. 1990).  Moreover, the mere fact that all of Altek's cameras qualified for an exemption in ***one quarter*** in 2011, ***seven years*** after the PLA was executed, is not evidence of the parties' intent at the time the PLA was executed. *Evans v. Famous Music*

---

[2] To support this contention, Kodak improperly relies upon extrinsic evidence of Altek's deposition testimony.

*Corp.*, 807 N.E.2d 869, 872, 775 N.Y.S.2d 757, 761 (N.Y. 2004).  Contrary to Kodak's assertions, Altek has paid substantial royalties pursuant to Section 4.10.  Hsia Decl., ¶ 28, Exs. 9, 10, 11.

Rather, it is Kodak's interpretation that renders Section 4.14 ineffective, thereby thwarting the purpose of the PLA.

### b. Altek's Interpretation Is Consistent With The Purpose Of Section 1.13 Of The PLA

Altek's interpretation is also consistent with the purpose of Section 1.13(b)(1).  For instance, under Section 1.13(b)(2), should Altek engage in a non arm's-length transaction, the "net sales" received by Altek would be increased to the "open market price" so that Altek could not manipulate its prices to take advantage unfairly of Section 4.14's exemption.  Setting "net sales" at "open market price" would set the royalty base at the highest possible value.  *See* Altek Motion at 9.  But in situations where a customer consigns parts to Altek and Altek discounts its sales price as such, Section 1.13(b)(2) would unfairly penalize Altek for this reasonable practice.  Section 1.13(b)(1) accounts for such unfair results and only requires that the value of the components provided by the customer be calculated into the "net sales."  *See* Metanat Decl., Ex. C, § 1.13(b)(1).  Therefore, under a "retail price" interpretation, Altek may still qualify for Section 4.14's exemption even if it is selling at the discounted rate due to Altek's OEM customer's consignment of parts to Altek.

## II. CONCLUSION

Altek has established that its interpretation of "open market price" as "retail price" is correct as a matter of law—it is consistent with the plain and ordinary meaning of the term and all provisions of the PLA within the four corners of the document. Kodak's interpretation, on the

other hand, creates multiple inconsistencies within the PLA and renders Section 4.14 ineffective. As such, Altek's interpretation is the only reasonable interpretation of "open market price." Based on the foregoing, Altek respectfully respects that the Court grant its motion for partial summary judgment on its interpretation of "open market price."

Dated: February 22, 2013                                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By: _____/s/ Morvarid Metanat_____
MORVARID METANAT
Attorneys for Defendant
ALTEK CORPORATION