**CONFIDENTIAL**

Michael F. Heafey
mheafey@orrick.com
Morvarid Metanat
mmetanat@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401

Lisa T. Simpson
lsimpson@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W. 52nd Street
New York, NY  10019-6142
Telephone:  (212) 506-5000
Facsimile:   (212) 506-5151

Attorneys for Defendant
Altek Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>       Plaintiff,<br><br>v.<br><br>ALTEK CORPORATION,<br><br>       Defendant. | Civil Action No.  12-cv-0246-DLC<br><br>Hon. Denise L. Cote |

**DEFENDANT ALTEK CORPORATION'S RESPONSE TO PLAINTIFF'S L.R. 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF EASTMAN KODAK COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 56.1, Defendant Altek Corporation ("Altek) hereby responds to Plaintiff Eastman Kodak Company's ("Kodak's") Statement of Undisputed Material Facts in support of its Motion for Partial Summary Judgment.

**PLAINTIFF'S MATERIAL FACT 1:** Kodak and Altek entered the PLA on July 1, 2004. (Ex. 1, PLA at 1; § 1.5.)

**DEFENDANT'S RESPONSE:** Disputed. Kodak and Altek "executed" the PLA in July, 2004. Altek executed the PLA on July 1, 2004, while Kodak executed the document on July 14, 2004. Declaration of Alex Hsia ("Hsia Decl.) ¶ 6, Ex. 1. Altek disputes that the PLA is a valid and binding agreement. During the negotiation of the PLA, Altek made clear to Kodak that it could not enter into a PLA without first acquiring board approval, pursuant to its bylaw and the governing Taiwanese Companies Act. Declaration of Movarid Metanat ("Metanat Decl.") Ex. 11; Hsia Decl. ¶ 21. The PLA states that Altek's authority to enter the agreement is subject to the approval of its Board of Directors. Hsia Decl. Ex. 1, at 1. Altek's bylaws state that Altek "is incorporated in accordance with the provisions of the [Taiwanese] Company Act for limited companies." Hsia Decl. Ex. 8, Article 1. The Taiwanese Company Act requires that "[b]usiness operations of a company shall be executed pursuant to the resolutions adopted by the board of directors . . . ." Metanat Decl. Ex. 12, Article 202. Such resolutions require a "majority vote at a meeting of the Board of Directors attended [in person] by over two-thirds of the directors" and "shall be conveyed by the chairman of the [B]oard" and have recorded meeting minutes. *Id.* at Article 204. Altek never held such a meeting, and the PLA was never submitted to the Board for approval under the Taiwanese Companies Act. Hsia Decl. ¶ 21. To date, the Board of Directors has not approved the PLA. *Id.*

**PLAINTIFF'S MATERIAL FACT 2:** Under the PLA, Altek obtained rights to Kodak's entire digital camera patent portfolio. (*Id*. at §§ 1.8 ("'Kodak Patents' shall mean all classes or types of patents ... in all countries of the world which are owned or licensable by Kodak..."), 3.1(a) "Subject to the obligation of Altek to make the [royalty] payment as specified

in Article 4 hereof, Kodak ... hereby grants and agrees to grant to Altek ... a non-exclusive, non transferrable license ... to practice any method or process involved in the manufacture, testing or use [of Licensed Products], under Kodak Patents.").)

**DEFENDANT'S RESPONSE:**   Undisputed to the extent the PLA embodies a valid and binding agreement.

**PLAINTIFF'S MATERIAL FACT 3:**   In return, Altek agreed to pay royalties for its use of Kodak's patented digital camera technology.  (*Id*. at § 4.2(a) ("... it is agreed that Altek shall pay to Kodak a commuted royalty...").)

**DEFENDANT'S RESPONSE:**   Disputed as incomplete.  Under the PLA, Altek "shall pay a royalty on all Digital Cameras sold or transferred by Altek or a Altek Subsidiary to a third party."  Hsia Decl. Ex. 1, at § 4.10.  Altek, however, is not required to pay royalties on camera sales exempted under Sections 4.12 and 4.14 of the PLA.  Section 4.12 exempts cameras sales from the royalty requirement if Altek's customer "agrees in a writing signed by Kodak to pay the above royalty, and actually pays said royalty, directly to Kodak . . . ."  *Id.* at § 4.12.  Section 4.14 exempts cameras that "Altek makes or sells on a 'contract assembly' basis" where Altek receives less than fifty percent of the "open market price" of the camera.  *Id.* at § 4.14.

**PLAINTIFF'S MATERIAL FACT 4:**   Altek is licensed under the PLA to sell digital cameras as an Original Equipment Manufacturer ("OEM") to customers that re-sell the cameras under their own brand name.  These are referred to as "OEM Licensed Products."  (*Id.* at § 1.14.)

**DEFENDANT'S RESPONSE:**   Undisputed to the extent the PLA embodies a valid and binding agreement.

**PLAINTIFF'S MATERIAL FACT 5:**  The PLA defines "Net Sales" of OEM Licensed Products as the total revenues that Altek receives from an arms-length sale.  (*Id*. at § 1.13(b)(1) ("In the case of an arms length sale or other disposal of an OEM Licensed Product... Net Sales

shall mean the total net revenue received by Altek and its Subsidiaries resulting from the sale or placement of such OEM Licensed Product...").)

    **DEFENDANT'S RESPONSE:**  Disputed as incomplete.  The PLA defines "Net Sales" of OEM Licensed Products in the case of an "arms length sale" as "the total net revenue received by Altek and its Subsidiaries resulting from the sale of placement of such OEM Licensed Product whether through purchase, lease or other commercial transaction to Altek's or Altek's Subsidiaries' OEM customers, less any Deductions."  Hsia Decl. Ex. 1, at § 1.13(b)(1).  "In the case of a sale pr disposal of an OEM Licensed Product which has not been sold in an arms length transaction," the PLA defines "Net Sales" as "Altek's open market price for such OEM Licensed Product in the country of sale on the date when such sale occurred less any Deductions or, alternatively, if there is no open market price, an imputed price determined on a commercially reasonable basis to be no less than the price of commercially available Digital Cameras in the country of sale which are in respect of features and functions equal or substantially equivalent to Altek's OEM Licensed Product."  *Id.* at § 113(b)(2).

    **PLAINTIFF'S MATERIAL FACT 6:** The PLA states that Altek must pay a 3.5 percent royalty on the "Net Sales" of its digital cameras to OEMs.  (*Id.* at § 4.2.)

    **DEFENDANT'S RESPONSE:**  Disputed.  The PLA states that Altek "shall pay to Kodak a commuted royalty of ▬▬▬▬▬▬▬▬▬ of the worldwide Net Sales . . . *of* all OEM Licensed Products."  Hsia Decl. Ex. 1, §4.2(a) (emphasis added).

    **PLAINTIFF'S MATERIAL FACT 7:** Section 4.14 provides that Altek need not pay royalties when it makes OEM sales on a "contract assembly" basis.  This occurs when the revenues that Altek receives from an OEM sale are less than 50 percent of the "open market price" of its digital cameras.  (*Id.* at § 4.14.)

    **DEFENDANT'S RESPONSE:**  Disputed.  A digital camera is "exclude[ed] from OEM Licensed Products" when it is made on a 'Contract Assembly' basis pursuant to Section 4.14 of the PLA.  A digital camera is exempt under the "Contract Assembly" basis where the

"Net Sales collected or received by Altek for said Digital Cameras is less than fifty-percent (50%) of the "open market price."  Hsia Decl. Ex. 1, §4.14.

>   **PLAINTIFF'S MATERIAL FACT 8:**  The PLA first mentions "open market price" in section 1.13.  Section 1.13 refers to *Altek's* open market price:

>> In the case of a sale or disposal of a [licensed product] that has not been sold in an arms length transaction, Net Sales [subject to the royalty requirement] shall mean ***Altek's open market price*** for such [ ] Product in the country of sale on the date when such sale occurred . . . .

(*Id*. At § 1.13(b)(2) (emphasis added).)

>   **DEFENDANT'S RESPONSE:**     Disputed.  The PLA first mentions "open market price" in section 1.13(a)(3):

>> In the case of a sale or disposal of Altek Branded Licensed Product which has not been sold in an arms length transaction to an Altek Subsidiaryor a non-affiliated third party, Net Sales shall mean Altek's ***open market price*** to a non-affiliated third party for such Altek Branded Licensed Product on the date when such sale occurred less any Deductions or, alternatively, if there is no ***open market price***, an imputed price determined on a commercially reasonable basis to be no less than the price of commercially available Digital Cameras which are in respect of features and functions equal or substantially equivalent to Altek's Branded Licensed Product.

Hsia Decl. Ex. 1, at § 1.13(a)(3) (emphasis added).  Section 1.13(b)(2) also refers to "open market price":

>> In the case of a sale or disposal of an OEM Licensed Product which has not been sold in an arms length transaction, Net Sales shall mean Altek's ***open market price*** for such OEM Licensed Product in the country of sale on the date when such sale occurred less any Deductions or, alternatively, if there is no ***open market price***, an imputed price determined on a commercially reasonable basis to be no less than the price of commercially available Digital Cameras in the country of sale which are in respect of features and functions equal or substantially equivalent to Altek's OEM Licensed Product.

*Id.* at § 1.13(b)(2).

>   **PLAINTIFF'S MATERIAL FACT 9:**  In section 4.14, the PLA then refers to "***the*** open market price":

> This paragraph is intended to exclude from OEM Licensed Products those Digital Cameras that Altek makes or sells on a 'contract assembly' basis, as defined below. For purposes of this Agreement a Digital Camera is a 'Contract Assembly Digital Camera' if and only if the Net Sales collected or received by Altek for said Digital Cameras is less than fifty-percent (50%) of *the* open market price . . .

(*Id*. at § 4.14 (emphasis added).)

**DEFENDANT'S RESPONSE:**   Undisputed.

**PLAINTIFF'S MATERIAL FACT 10:**  It is undisputed that "the open market price" referenced in Section 4.14 has the same meaning as "Altek's open market price" in Section 1.13. (Ex. 2, Lin Dep. Tr. at 201:18-22 ("Q: now—and it's your position—it's Altek's position that open market price in 1.13 means the same thing as open market price in paragraph 4.14, correct? A: Yes.").)

**DEFENDANT'S RESPONSE:**   Undisputed.

**PLAINTIFF'S MATERIAL FACT 11:**  Altek's only market is the OEM market. It only sells digital cameras to OEM customers and has never sold digital cameras to the retail market. (*Id*. at 64:20-22 ("Q. was Altek selling any digital cameras directly to the end users? A. no, never.").)

**DEFENDANT'S RESPONSE:**   Disputed. Plaintiff's reference to "the OEM market" is vague. Altek manufactures digital cameras to meet the specifications of its customers. Hsia Decl. ¶ 3. Altek does not sell the same or "substantially equivalent" camera to more than one customer. *Id.* As a result, it does not have a "market" for the cameras it manufactures. Altek's customers sell the cameras to retail consumers either directly or through distribution channels. *Id* at 4. Therefore, the cameras Altek manufacturers are sold on the retail market; Altek has a retail market for its cameras.

**PLAINTIFF'S MATERIAL FACT 12:**  The PLA never mentions "retail price" or the "retail market."

**DEFENDANT'S RESPONSE:** Disputed. The PLA never explicitly mentions "retail price" or the "retail market." The PLA does, however, mention "open market price" several times. Hsia Decl. Ex. 1, ¶¶ 1.13, 4.8, 4.14. "Retail price" is the plain and ordinary meaning of "open market price." "Open market price" is the price of the product in an open market. An open market is a market that is available to the public at large – not just distributors. "Retail" is defined as "[t]he sale to the *public* of goods . . ." 2 The New Oxford English Dictionary, 2571 (L.Brown, ed., 1993) (emphasis added). The "public" consists of any and all individuals. In other words, the "retail price" is the price of a camera to a consumer in the "open market." Moreover, "retail price" is the only reasonable interpretation of "open market price." For example, applying Kodak's interpretation, if Altek sold a camera where Altek's "net sales" were less than fifty percent of the "open market price," Altek should benefit from the Section 4.14 exemption. Because the transaction price is less than the "open market price," however, Kodak's interpretation negates Section 4.14 because Section 1.13(b)(2) resets Altek's "net sales" to the "open market price." Altek loses the Section 4.14 exemption because its "net sales" now equal the "open market price." Altek could never obtain the Section 4.14 exemption. The interpretation Kodak sets forth is unreasonable because it creates contradiction between material provisions of the PLA and renders Section 4.14 ineffective. Declaration of Jonathon Tomlin ¶¶ 30, 41. Therefore, the only reasonable interpretation of "open market price" that can be understood by the plain meaning within the four corners of the PLA is "retail price."

**PLAINTIFF'S MATERIAL FACT 13:** Altek asserts that under its interpretation of "open market price" as "retail price," almost all of its digital camera sales qualify as "contract assembly sales" under Section 4.14. In the second quarter of 2011, for example, Altek made more than █████████ selling digital cameras. But it claimed that every single sale could be excluded. (Ex. 6, Altek Q2 2011 Royalty Statement.)

**DEFENDANT'S RESPONSE:** Disputed. Kodak's contention is incorrect and is contrary to the evidence. Altek has never made such an assertion. To date, Altek has paid Kodak roughly $2,500,000 in royalties. Hsia Decl. ¶ 28, Exs. 9-11.

**PLAINTIFF'S MATERIAL FACT 14:** Before Kodak filed its complaint in this case, Altek never asserted that the PLA was invalid. (Ex. 3, Altek's Second Supplemental Response to Kodak's Request for Admission No. 2.)

**DEFENDANT'S RESPONSE:** Disputed. Altek cannot currently present facts that would support the contention that prior to the initiation of this action, Altek told Kodak that the PLA was invalid. Altek, however, has been denied the opportunity to depose the available key witnesses involved in the negotiation of the PLA and therefore, is without sufficient knowledge to respond one way or another whether it disputes this statement. Metanat Rule 56(d) Decl. ¶ 11.

**PLAINTIFF'S MATERIAL FACT 15:** Before Kodak filed its complaint in this case, Altek never informed Kodak that its board of directors had not approved the PLA. (Ex. 3, Altek's Second Supplemental Response to Kodak's Request for Admission No. 1; Ex. 2, Lin Dep. Tr. at 125:8-14 ("Q so you -- no one from Altek ever told Kodak that its board had never approved the final version of the patent license agreement, right? [Objection by Altek counsel] A. Yes, because no one in Kodak ever asked that question to Altek.").)

**DEFENDANT'S RESPONSE:** Disputed. Altek cannot currently present facts that would support the contention that prior to the initiation of this action, Altek never told Kodak that its Board of Directors had not approved the PLA. Altek, however, has been denied the opportunity to depose the available key witnesses involved in the negotiation of the PLA and therefore, is without sufficient knowledge to respond one way or another whether it disputes this statement. Metanat Rule 56(d) Decl. ¶ 11.

**PLAINTIFF'S MATERIAL FACT 16:** Section 9.1 of the PLA provides that Altek must obtain any required Board of Director Approval no later than June 30, 2004:

> This Agreement is made subject only to the approval of Altek's Board of Directors in accordance with the by-laws of the corporation.  Such Board approval shall not be unreasonably withheld, *nor shall it be delayed beyond June 30, 2004 local time*.

(Ex. 1, PLA at § 9.1 (emphasis added).)

**DEFENDANT'S RESPONSE:**     Disputed.  There is no provision in the PLA whereby a duty arises for Altek to obtain Board approval.  Hsia Decl. Ex. 1.  Rather, the PLA states that "Such Board approval shall not be unreasonably withheld, nor shall it be delayed beyond June 30, 2004 local time."  *Id.* at § 9.1.

**PLAINTIFF'S MATERIAL FACT 17:**  The PLA was executed as of July 1, 2004 – the day after the deadline for Altek to obtain any required board of director approval.  (*Id.* at § 1.5 (effective date of the PLA is July 1, 2004); *id.* at 20 ("[T]he parties have caused their respective corporate names to be affixed hereto and this instrument to be signed by their duly authorized officers, all as of the day and year first above written.").)

**DEFENDANT'S RESPONSE:**     Disputed.  Altek executed the PLA on July 1, 2004, while Kodak executed the document on July 14, 2004.  Hsia Decl. Ex. 1.  Altek has no duty under the PLA to obtain Board approval.  *Id.*  Rather, the PLA states that "Board approval shall not be unreasonably withheld, nor shall it be delayed beyond June 30, 2004."  *Id.* at § 9.1.

**PLAINTIFF'S MATERIAL FACT 18:**  Altek's only explanation for allegedly failing to obtain Board of Director approval is that it forgot to submit the PLA to its Board.  (Ex. 2, Lin Dep. Tr. at 124:14-21 ("Final version for some reason, I don't know, nobody remembered, was not sent in for approval."); *see also id.* at 123:12-19 ("[I]t was forgotten to send it [to the Board]").)

**DEFENDANT'S RESPONSE:**     Disputed.  Altek has no duty under the PLA to obtain Board approval.  Hsia Decl. Ex. 1.  Rather, the PLA states that "Board approval shall not be unreasonably withheld, nor shall it be delayed beyond June 30, 2004."  *Id.* at § 9.1.  Moreover, Kodak's cited testimony does not indicates that Altek's *only* explanation for failing to obtain

Board of Director approval is that it forgot to submit the PLA to its Board.  Metanat Decl. Ex. 2, Lin Dep. 123:1-11.  ("And one of the reasons – well, not reason – well, explanations – let me put it that way – was that, as I said repeatedly, that the business was stopped for long time, and it was a very urgent case for both party to – at least the business side – to resume the business and to start projects so that we can catch the market window for those things.  So people were busy, so maybe that was the reason it was forgot.  But I could not really get a clear answer on that.").

**PLAINTIFF'S MATERIAL FACT 19:**  Since 2004, Altek "has been behaving as if there's a contract" and has paid royalties to Kodak (although Kodak contends that Altek has not correctly paid those royalties).  (*Id.* at 153:6-13 ("Q. ... But we can both agree that between 2004 and 2011, Altek paid royalties to Kodak under the patent license agreement, correct? [Objection by Altek Counsel] A. Altek has been behaving as if there's a contract.  Based on that document we need to make report and pay.").)

**DEFENDANT'S RESPONSE:**    Disputed.  Altek did not have authority to bind the company to the PLA without Board approval.  Hsia Decl. Ex. 1, at 1.  Altek's Board of Directors did not approve the PLA.  Hsia Decl. ¶ 21.  Altek does not absolutely deny that an agreement between the parties exists.  But to the extent that such agreement exists, it is an implied contract based on the parties' performance.

**PLAINTIFF'S MATERIAL FACT 20:**  In January 2005, Altek's president, Alex Hsia, publicly stated that Kodak and Altek "entered a license agreement" that required Altek to pay royalties.  "(Ex. 10, January 31, 2005 Letter from Altek to Digitimes Publications ("Kodak and Altek have entered a license agreement for digital cameras.  Pursuant to that agreement all licensed products sold by Altek are royalty bearing to Kodak with the exception of sales to Kodak itself.").)

**DEFENDANT'S RESPONSE:**    Undisputed.

**PLAINTIFF'S MATERIAL FACT 21:**  In 2006, Altek entered two written amendments to the PLA which state that terms of the PLA "remain in full force and effect." (Ex. 4, Amendment 1 to the PLA; Ex. 5, Amendment 2 to the PLA.)

**DEFENDANT'S RESPONSE:**    Undisputed.

**PLAINTIFF'S MATERIAL FACT 22:**  In 2010, Altek submitted to an audit of its royalty payments under the PLA.  (Ex. 7, KPMG Audit Report.)

**DEFENDANT'S RESPONSE:**    Undisputed.

Dated:  February 15, 2013    ORRICK, HERRINGTON & SUTCLIFFE LLP


By: _____*/s/ Morvarid Metanat*_____
MORVARID METANAT
Attorneys for Defendant
ALTEK CORPORATION